## Carroll v. Bosworth, Auditor.

(Decided December 20, 1912.)

### Appeal from Franklin Circuit Court.

1. Legislative Act—Sufficiency of Title—Purpose of Act to Validate Contract—Employment of Attorney by Attorney General—Constitutional Provision.—Appellant was employed by the Attorney General to prosecute a suit in favor of the State against Bacon, a printing contractor, to recover a certain sum improperly collected by the contractor, and as a result of the litigation, judgment for $24,000.00 was recovered. At the 1912 session of the General Assembly in order to validate the contract it passed an act permitting appellant to sue the State for a fee of not exceeding $500.00 for the services performed. Held, the act throughout is dealing with the single subject of permitting appellant to get from the Commonwealth a fee to which he, in justice is entitled, and the mere fact that the act in addition to authorizing him to sue, went further and validated an incomplete contract between him and the State, is not in violation of either the letter or spirit of section 51 of the Constitution; it is merely dealing with two aspects of the same general subject, namely, the authority to sue, and the validating of a contract which is an incident to the authority to sue.

2. Legislative Act—Legalizing Invalid Act of Officer of Commonwealth—Constitutional Provision.—By the provisions of subsection 13 of section 59 of the Constitution the Legislature by express inference is given authority to validate as against the Commonwealth, the unauthorized on invalid acts of its officers or agents, and the act in question, taken and read as a whole, cannot be interpreted in any other way than to legalize the in-

complete contract between appellant and the Attorney General.

3. Legislative Act—Enforcement of Invalid Contract—Permissible for Legislature Under the General Title to Deal With Subject of Act in All Its Phases.—The enforcement of the invalid contract between appellant and the Commonwealth, was the subject of the act, and it was permissible for the Legislature, under the general title, to deal with all phases of it.

4. Legislative Act—Auditing Claim Against Commonwealth—Constitutional Provision.—The claim that the act undertakes to audit or allow a private claim against the Commonwealth, which is prohibited by section 58 of the Constitution, cannot be maintained; the purpose of the act was to permit appellant to sue the State and to validate an incomplete contract with the Attorney General, and it shows on its face that after the allowance of the claim by the circuit court, the same was to be audited and a warrant issued by the Auditor.

D. L. HAZELRIGG and T. C. CARROLL for appellant.

JAMES GARNETT, Attorney General, and O. S. HOGAN, Assist-Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

During the 1904 session of the Legislature an investigation was instituted as to certain alleged over-payments to one Henry Bacon, who was, at the time, a contractor with the State as to a certain class of printing. Appellant was then a State Senator. He was a member of that investigating committee and, as such, became very familiar with the transactions between Bacon and the Commonwealth. As a result of that investigation the Attorney General of Kentucky, N. B. Hays, thereafter determined to institute an action against Bacon and his sureties, seeking to have paid back to the State certain moneys improperly collected by Bacon. By reason of appellant's familiarity with the transactions, acquired through the legislative investigation, the Attorney General sought to employ him as an assistant in the proposed litigation; but it being the opinion of both the Attorney General and appellant, at the time, that, under the existing statutes, the Attorney General had no right to employ him in such way as to bind the State, and possibly for other reasons, the appellant, at the time, declined the employment. But subsequently some parties in Louisville sought also to employ appellant to assist the Attorney General, proposing to pay him a fee of $500 to aid in the

prosecution of the suit. He accepted the employment upon condition that the Attorney General was still willing to employ him for the State, and at once notified the Attorney General of his employment by these Louisville parties, and indicated to him that he was then willing to accept an employment from the Attorney General upon behalf of the State, as had been previously proposed, and fully acquainting the Attorney General with the nature of his agreement with the Louisville parties. Shortly thereafter the suit was instituted against Bacon and his sureties and was vigorously prosecuted, both in the circuit court and in this court; the appellant, apparently by reason of his detailed knowledge of the transactions, taking the leading part. The final judgment of the court was that the State recover of Bacon about $24,000, but released his sureties from liability. The Louisville parties paid appellant the fee which they agreed to pay him; and at the 1912 session of the Legislature the following act was passed, authorizing him to sue the State, to-wit:

"An act permitting Charles Carroll to sue the State for a fee not exceeding $500.00 for legal services performed.

"Whereas, in December, 1904, the Attorney General of the State employed Charles Carroll to assist in the prosecution of a suit against Henry Bacon, accepted bidder for the second class printing and binding for the State for two years from January, 1902, said suit being in the name of the Commonwealth of Kentucky on the relation of the Attorney General against said Bacon and his sureties, and in said suit it was sought to construe the printing laws of the State, and to recover of Bacon an alleged overcharge against the State, which was paid to him by reason of his claim for said printing. Said Carroll accepted said employment, and assisted in said suit from its inception in the Franklin Circuit Court to its final determination in the Court of Appeals, covering a period of nearly four years, and in said litigation said Carroll assisted in the preparation of the pleadings, and took an active part in the examination of the witnesses and orally argued the case in the Franklin Circuit Court, and orally argued and briefed it in the Court of Appeals, which on the 20th of June, 1908, in an opinion which will be found in 111 Southwestern, beginning on page 387, reversed the judgment of the Franklin Circuit Court, and sustained the contention of the Commonwealth and ordered judgment against Bacon for money collected

from the State without warrant of law for $23,992.69 with interest from August 29, 1902, and the result of said litigation was of great benefit to the State. Said suit was prosecuted under section 340a, Kentucky Statutes, and whereas, it was agreed between the Attorney General and said Charles Carroll at the time of the employment of said Carroll that he should receive for his services in said litigation the sum of $500.00, but there being some question whether under said section 340a of Kentucky Statutes, the contract between the Attorney General and said Charles Carroll is binding upon the State, and it appearing in equity and good conscience that said Charles Carroll is entitled to the fee agreed upon between him and the Attorney General in said litigation and having rendered services to the State in same to amount greater in value than said amount of $500.00, therefore,

"*Be it enacted by the General Assembly of the Commonwealth of Kentucky*:

"That said Charles Carroll is hereby permitted to sue the Commonwealth of Kentucky in the Franklin Circuit Court under the style of Charles Carroll, Plaintiff v. Henry M. Bosworth, Auditor, Defendant, in order that said court may determine and allow after hearing the proof as to the value of said services a reasonable fee to said Carroll not exceeding $500.00 for his services in the above mentioned litigation, and when said judgment becomes final the Auditor is directed to issue to said Charles Carroll his warrant upon the Treasurer of the State for the amount of said judgment, and said Treasurer is directed to pay said warrant out of any funds in his hands not otherwise appropriated.

"Approved by the Governor, March 12, 1912."

Thereafter the appellant instituted this action in the Franklin Circuit Court, and his petition having been dismissed, he appeals.

There is no doubt of the reasonableness of the fee in this case under the evidence, and it appears that the services of appellant have resulted in great benefit to the State by reason of the fact that in the action against Bacon the printing laws of the State were construed in such way as to reduce the printing expense since that time, although it appears that the judgment against Bacon has never been collected. We are, therefore, confronted with these questions, to-wit:

1. Was the title of the act sufficient, under the provisions of section 51 of our Constitution, to authorize

the Legislature in the body of the act to validate an invalid contract between the Attorney General and appellant?

2.  Under the provisions of section 59 of the Constitution did the Legislature have the power by special enactment to validate the invalid contract between the Attorney General and appellant, and did the act in fact have that effect?

3.  Was the effect of the legislative act to audit or allow appellant's claim against the Commonwealth as is prohibited by section 58 of the Constitution?

We will discuss these questions in the order named.

1.  Section 51 of the Constitution is as follows:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title   *   *   *."

The proper interpretation of this section has frequently been before this court.  The section is in exactly the same language as section 37, article 2, of the Constitution of 1850.  In the case of Phillips v. Cov. & Cin. Bridge Co., 2 Met., 219, this court had before it the same question which we here have, and the determination of the question in that case has been uniformly followed since.  There the act was entitled "an act to amend the charter of the Covington & Cincinnati Bridge Company." Section 1 of the act increased the capital stock of that company to $700,000.  The second section of the act authorized the company to sell, and the city of Covington to buy, $100,000 of the captial stock, and in payment thereof authorized the city to sell her bonds to that amount for that purpose.  And it was urged that the act, insofar as it related to the City of Covington, was entirely foreign to the subject matter of the title, and, therefore, invalid.  The court, in discussing the history of this constitutional provision said:

"A practice had become prevalent of uniting in the same act of the legislature subjects which had no relation to each other, and which were wholly dissimilar and unconnected.  Hence it not unfrequently happened that the title of an act gave no indication whatever of some of the subjects to which its provisions related.  And by permitting amendments to be made to a bill, by which distinct and unconnected matters might be introduced into and made a part of it, an improper influence was sometimes brought to aid in its final passage.  To remedy this evil the constitutional provision under consideration was

adopted.  Such a construction should therefore be given to it as is necessary to render it effectual in accomplishing the object for which it was designed.  But it should not be so construed as to restrict legislation to such an extent as to render different acts necessary where the whole subject matter is connected, and may be properly embraced in the same act.

"It is not necessary for the accomplishment of the purpose contemplated to go from one extreme to the other, nor would such a course be consistent with the intention of the framers of the Constitution.  This prohibition should receive a reasonable and not a technical construction; and looking to the evil intended to be remedied, it should be applied to such acts of the legislature alone as are obviously within its spirit and meaning.  None of the provisions of a statute should be regarded as unconstitutional where they all relate directly or indirectly to the same subject, have a natural connection, and not foreign to the subject expressed in its title."

And again in the same case the court said:

"The power to sell stock to the City of Covington necessarily requires that a power should be conferred on the latter to subscribe and pay for it; for without such power, the power to sell would be nugatory.  The subject is the same, although it relates to a transaction to which two corporations are parties, one of whom only is named in the title of the act.  If by the act a power had been conferred on the City of Covington to subscribe for the stock of any other corporation but the one named in the title of the act, then the provision would fall within the constitutional prohibition, and be clearly null and void.  But as it is restricted in its operation to matters pertaining to the bridge company, and the provisions of the act, so far as they relate to the City of Covington, are apposite to the purpose which was intended to be effected by its passage, and are sufficiently indicated in its title, it is not liable to this constitutional objection.  It was certainly not necessary for the Legislature to pass two separate acts to effect the object it had in view; one to enable the company to sell the stock to the city, and another to enable the city to subscribe and pay for it.  The constitutional provision relied upon must receive a rational construction, and not one that would lead to such an unnecessary and absurd result."

That is the leading case in Kentucky interpreting that provision of the Constitution, and the broad rule laid

down therein has never been departed from and has been followed and upheld in the following cases: Johnson v. Higgins, 3 Met., 569; O'Bannon v. Railroad Co., 8 Bush, 353; McReynolds v. Smallhouse, 8 Bush, 453; Howland C. & I. Works v. Brown, 13 Bush, 685; Hoke v. Com., 79 Ky., 573; City of Covington v. Voskotter, 80 Ky., 221; Citizens Gas Light Company v. Louisville Gas Light Company, 81 Ky., 270; Gayle v. Owen County Court, 83 Ky., 67; Wulftange v. McCollom, 83 Ky., 364; Ky. Union R. Co. v. Bourbon County, 85 Ky., 112; Burnside v. Lincoln County Court, 86 Ky., 426; Rogers v. Jacob, 88 Ky., 508; Board of Trustees v. Maysville, etc. R. Co., 97 Ky., 150; Conley v. Com., 98 Ky., 130; Smith v. Com., 8 Bush, 112; Bierley v. T. P. Co., 17 R., 36; White v. Com., 20 R., 1944; Henderson Bridge Co. v. Aloes, 28 R., 996. In this case the title to the act indicates that the General Assembly is dealing with the general subject of authorizing appellant to sue the State for a fee which he claims against it, and there is in the body of the act not only an authority to sue, but in addition thereto a provision directing the court in which he is authorized to enter suit to ascertain merely the amount of the claim, not to exceed $500, and to render judgment therefor; and a further provision directing the Auditor upon the rendition of the judgment to issue his warrant. The act throughout is dealing with the single subject of permitting appellant to get from the Commonwealth a fee to which in justice he is entitled, and the mere fact that the act in addition to authorizing him to sue, went further and validated an incomplete contract between him and the State, is not in violation of either the letter or spirit of section 51; it is merely dealing with two aspects of the same general subject, namely, the authority to sue, and the validating of a contract which is an incident to the authority to sue. We cannot assume that the Legislature meant to do a vain thing, viz.: to authorize appellant to sue the State on a contract which was, by all the parties connected with it, recognized as invalid, unless at the same time it took some action to validate the incomplete contract. The enforement of the invalid contract between appellant and the Commonwealth, was the subject of that act; and it was permissible for the Legislature, under the general title, to deal with all phases of it.

2. Section 59 of the Constitution provides:

"The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely;

"Subsec. 13.   To legalize, except as against the Commonwealth, the authorized or invalid act of any officer or public agent of the Commonwealth   *   *   *."

We have here by inference express authority for the Legislature to legalize or validate as against the Commonwealth the unauthorized or invalid acts of its officers or agents; and the act in this case, taken and read as a whole, cannot be interpreted in any other way than to legalize the unauthorized contract between the Attorney General and appellant.   The preamble of the act refers to the circumstances under which the agreement between the Attorney General and appellant was made, and also to the fact that under the then existing statutes there was a doubt as to whether it was binding upon the State; and in the body of the act the court in which appellant is authorized to sue is left only the duty of hearing proof as to the value of his services, and it is in effect directed to render judgment for a reasonable fee, not to exceed $500.   There can be no doubt of the legislative purpose to legalize the contract between the Attorney General and appellant so as to allow him to recover against the Commonwealth.

3.   The claim that this act undertakes to audit or allow a private claim against the Commonwealth, which is prohibited by section 58 of the Constitution, cannot be maintained; as we have said, the purpose of the act was to permit appellant to sue the State and to validate his incomplete contract with the Attorney General; and the act on its face shows that after the allowance of the fee by the circuit court, the same was to be audited and warrant issued by the Auditor.

The judgment is reversed with directions to enter a judgment for appellant in the sum of $500 with interest from the date of the judgment.

Judge Carroll not sitting.