# Dishman et al. v. Coleman, Auditor of Commonwealth.

(Decided May 24, 1932.)

GUY BRIGGS, L. W. MORRIS, WILLIAM MARSHALL BULLITT, LEO T. WOLFORD and BRUCE & BULLITT for appellants.

J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Edward B. Dishman was treasurer of the state for the term of four years beginning on the first Monday

in January, 1924. He gave bond, with a corporate surety, in the penal sum of $300,000, conditioned "that the said Edward B. Dishman shall faithfully perform and discharge all of the duties of the office of Treasurer for the State of Kentucky." The statute under which the bond was given provided that "for any breach thereof, action may be instituted, from time to time, and recovery had to the extent of the damages sustained by the Commonwealth or by others." Ky. Stats., sec. 4680. The commonwealth, on the relation of the state auditor, instituted this action against Dishman and the surety upon his official bond to recover several sums of money paid out by the treasurer upon the ground that the payments were not authorized by law.

The commonwealth prevailed in the circuit court, and Dishman and his surety have prosecuted the present appeal.

The commonwealth sought recovery for these items:

1. The sum of $2,091.67 paid to the treasurer in excess of $600 per annum for his services as custodian of securities for the insurance department. The position of the plaintiff is that the statute (section 762) fixed $600 as the full compensation to be paid the treasurer for the services required of him in that respect, and excluded the power to allow any additional compensation therefor.

2. The sum of $2,834.96 paid to the various assistant treasurers that served under Dishman in excess of the salary of $1,500 allowed by law to that official. Ky. Stats., sec. 4683. The basis of this claim is fundamentally the same as that respecting the first item.

3. The sum of $797.50 paid for premiums upon fidelity bonds to indemnify Dishman against any losses that might result from forgeries committed by the assistant treasurer or by any of the employees or clerks of his department. This claim is rested upon an alleged lack of authority of law to make such payments from the state treasury.

4. The sum of $2,214.91 paid out by the treasurer in running his office, which was in excess of the amount of the appropriation made for that purpose. It is predicated upon a payment made without an appropriation therefor, which was contrary to section 230 of the Constitution.

The numerous defenses interposed will be discussed and disposed of in the course of the opinion.

It is insisted on behalf of the surety that it is not liable for the first item claimed because the money was paid to Dishman by the insurance commissioner, and if any default existed it was not that of the treasurer. Reliance is rested upon a line of cases to the effect that the surety in an official bond assumes no liability to account for moneys which the officer had no right to receive. Com. v. Bacon (Ky.), 111 S. W. 387; Hammond v. Crawford, 9 Bush 75; Duncan v. Smith, 15 Ky. Law Rep. 58; American Bonding Co. v. Blount, 65 S. W. 806, 23 Ky. Law Rep. 1632; Hatcher v. Pike County, 13 Ky. Law Rep. 494; Clark v. Logan County, 138 Ky. 683, 128 S. W. 1079; Elliott v. Com., 144 Ky. 335, 138 S. W. 300; Equitable Surety Co. v. City of Newport, 194 Ky. 363, 238 S. W. 1046.

None of the cases cited involved the office of treasurer or a bond of the type now presented. Four of them were actions upon the bonds of county judges, which did not cover money received by that officer which it was not his duty, and which he had no right, to receive. Two of the cases affected the sureties of clerks, who were held not liable for any money illegally paid to the clerks. The other cases related to a school commissioner and a public printer, where the same principle upon the same reasoning was applied.

If Dishman had merely received the money paid to him by another official without his own official participation in withdrawing the money from the treasury, such cases would apparently apply. But in this instance the money was paid out of the state treasury on the treasurer's official check, and his liability, as well as that of his surety, is not predicated upon a mere receipt of the money, but upon his own act in causing it to be taken from the treasury, when there was no legal authority therefor. The terms of the bond expressly cover payments of this character, whether the particular payment be made to the treasurer or to another person. Com. v. Tate, 89 Ky. 587, 13 S. W. 113, 12 Ky. Law Rep. 1; Com. v. Carter, 55 S. W. 701, 21 Ky. Law Rep. 1509; Stewart v. Com., 104 Ky. 489, 47 S. W. 332, 20 Ky. Law Rep. 686; City of Princeton v. Baker, 237 Ky. 325, 35 S. W. (2d) 524.

It is also argued that the increase in the work required additional service by the treasurer which the insurance commissioner recognized and compensated accordingly. An analogy is sought to be discovered in those cases where the Legislature has increased the compensation of officers in consideration of the performance of additional duties, not naturally or necessarily belonging to the office. James v. Cammack, 139 Ky. 223, 129 S. W. 582; Coleman v. Hurst, 226 Ky. 501, 11 S. W. (2d) 133. But such cases cannot be so applied. At least two insurmountable obstacles prevent that result. In the first place the pleading does not manifest what the extra or additional duties were or how they were imposed. In the next place, the authority to impose additional duties to those required by law, or to expend public funds therefor, has not been delegated to any administrative official. The power in that respect which the legislature possesses is not invested in the administrative departments. If it should be assumed that the salary fixed was inadequate to compensate for the work required and the responsibility imposed, it would not follow that such a defect or omission of the law could be remedied by an agreement among the officials concerned. The salary specified by law for the discharge of official duties impliedly excludes the allowance of any other compensation therefor. Cf. Bruner v. Jefferson County, 239 Ky. 613, 40 S. W. (2d) 271. The same reasoning disposes of the same argument advanced to sustain the payments made to the assistant treasurers in excess of the salary fixed by law for the incumbents of that office.

It is urged that the salaries fixed by section 762 and section 4683 of the Kentucky Statutes were repealed by subsequent legislation.

Section 696 of the statutes required the treasurer to act as custodian of certain securities deposited with the insurance commissioner, and section 762, which was a part of the same chapter, contained this clause:

"There shall be annually paid to the treasurer from the fund out of which the insurance commissioner is paid, the sum of six hundred dollars for the services to be rendered by him under and pursuant to the provision of this chapter."

Section 4682 of the Kentucky Statutes created the office of assistant treasurer and defined his duties. Sec-

tion 4683 fixed the annual salary of the treasurer at $3,-600 in lieu of all fees and other compensation, and fixed the salary of the assistant treasurer at $1,500 per year. No change was made therein until 1928, when the salary of the assistant was raised to $2,500 per year. Acts of 1928, ch. 115, p. 406.

The Budget Commission Act, passed March 16, 1918, created a budget commission, required certain information to be supplied to that commission, and delegated to it certain defined duties. The act repealed all continuing appropriations and provided for specific appropriations to maintain each department of the government. We find nothing in that act expressly or impliedly affecting the salaries of the treasurer or the assistant treasurer. Section 1992a-1 et seq., Ky. Stats., 1922 Edition, superseded by the Act of March 27, 1926, and carrying the same section numbers in the 1930 edition of the statutes.

The appropriation acts for the years in question did not fix any salaries or authorize any change in the salaries as then fixed by law. It provided for the treasury department as follows:

> "State Treasurer.—There is hereby appropriated out of the general expenditure fund, for the use and benefit of the State Treasurer's Department, for the fiscal year ending June 30, 1924, for the purpose of paying all salaries, clerical help, printing, stamps, supplies and all other expenses incident to the maintenance and operation of said department, now authorized by law or that may hereafter be authorized by law, the sum of $13,250.00." Acts of 1922, ch. 111, sec. 40.

It will be seen that the appropriation act did not purport to fix the salaries, but expressly confined the expenditure of the appropriation to the payment of salaries and other expenses incident to the maintenance and operation of the department, as was then authorized by law, or as might thereafter be authorized by law. The act manifests a purpose to preserve the fixed salaries, or at least exhibits no intent to alter them, and in the face of such a provision there is no room for the argument that the established salaries were impliedly repealed. There can be no implied repeal of a statute unless an irreconcilable conflict appears, and the later is so repugnant to the earlier one that both statutes cannot stand. Campbell

County Election Commission v. Weber, 240 Ky. 373, 42 S. W. (2d) 511.

The appropriation was to pay the salaries which had been fixed by law, and the other matters mentioned were to be cared for by the treasurer with the residue of the appropriation. The entire expense of the office, including the salaries as established, had to be paid from the amount appropriated, but the amount of the salaries as fixed by previous statutes were not changed. After the salaries were paid, the amount remaining of the appropriation could be used for clerical help, and other expenses authorized in the maintenance and operation of the department, but the whole expense had to be kept within the limit fixed by the appropriation. If an insufficiency developed, the compensation of the clerical help and the other expenses would have to be adjusted to fit the necessities of the case. Bosworth v. Shuck, 118 Ky. 458, 81 S. W. 240, 26 Ky. Law Rep. 324.

The discretion vested in the treasurer did not include the right to increase any salaries fixed by statute, or to incur an expense beyond the appropriation. Indeed, the Legislature could not authorize an expenditure beyond the amount appropriated. It is expressly forbidden by section 230 of the Constitution, which precludes the payment of any money from the state treasury except in pursuance of an appropriation made by law.

The case of Falk v. Huston, 25 Idaho 26, 135 P. 745, cited by appellant, is not an authority for his position. In that case the salary of an official had been fixed by statute at $1,800 per year. The appropriation bill fixed the salary of the same official at $3,600. The court held that the officer was entitled to the salary fixed by the appropriation bill, since it operated to repeal the earlier law fixing the salary. No such situation existed here. A blanket appropriation was passed to pay the salaries and all other expenses. No change in the salaries was made, but merely a provision for their payment. Neither is the case of U. S. v. Mitchell, 109 U. S. 146, 3 S. Ct. 151, 153, 27 L. Ed. 887, applicable here. It involved the construction of certain acts of Congress. Mitchell was an interpreter for an Indian tribe, and his salary was fixed by law. Congress made an appropriation of a sum less than the salary fixed, and the entire amount appropriated was paid to him. Mitchell then sued for some additional compensation. The Supreme Court held that

the various acts evidenced a change in the policy of Congress. For the fixed salary a fund was substituted to be disbursed at the discretion of the Secretary of Interior from which additional allowances might be given to the interpreters. It was held that the original act fixing the salary was superseded by the later act. The court said:

"The whole question depends on the intention of congress as expressed in the statutes. Whether a simple failure by congress to appropriate any or a sufficient sum to pay the salary of an officer fixed by previous law is of itself an expression of purpose by congress to reduce the salary, we do not now decide. That is not this case. On the contrary, in this case congress has in other ways expressed its purpose to reduce for the time being the salaries of the interpreters.

"This purpose is of course irreconcilable with the provisions of the Revised Statutes on the same subject, and those provisions must be considered as having been suspended until they were finally repealed by the act of May 17, 1882. As appellee has been paid in full his salary as fixed by the later acts, which were in force before and during an continued in force after his term of service, he has no cause of action against the United States."

Obviously the intent of the Legislature to repeal the law fixing the salaries of the officers named could not be derived from an appropriation fully adequate to pay that amount of salary. We are unable to see haw the appropriation act involved here could be construed to repeal the statutes fixing the salaries of the treasurer and his assistant.

If an appropriation is not sufficient to pay the salaries fixed by statute, and also to maintain the office according to the proper standard, any necessary re-adjustment must be made among the clerks and in the other expenses and not by changing the salaries fixed by law. Shuck v. Coulter, 90 S. W. 271, 28 Ky. Law Rep. 817. The later appropriations acts did not use the words "as now authorized by law, or as may hereafter be authorized by law," which appeared in the acts for the previous years. We do not deduce from this circumstance any intent to make a change in policy or any difference in the legal effect. Such an equivocal change in verbiage could not

authorize the radical change in construction contended for by the appellants.

It appeared that the treasurer had procured forgery bonds covering the assistant treasurer and all the clerks and employees of the treasury department. The premiums upon these bonds were paid out of the state treasury. The commonwealth claims that the payment of such premiums was not authorized by law. We have a statute, passed in 1920, which authorized the payment of premiums by the state upon bonds of state officers elected by the voters of the state at large. Section 3751a-1, Ky. State. It is not contended that such statute authorized the payments in question. The appellants contend that it was a necessary expense, incident to the maintenance and operation of the treasury department, and properly payable out of the appropriation. But the bonds were not for the benefit of the commonwealth. Her protection was by virtue of Dishman's bond as treasurer. These particular bonds were for the indemnity of Dishman against any losses resulting from forgery by his assistants, clerks or employees. It was not an expense of the state incident to the maintenance and operation of the treasury department. It was an expense incurred purely for the personal protection of the treasurer. We find no reasonable basis for holding that such an expenditure comes within the provisions of the appropriation act. The bonds were not issued to the commonwealth, but to the treasurer. The state was already protected by a bond for which it paid the premium. We are constrained to the conclusion that the payments of premiums on the forgery bonds out of the state treasury was not authorized by law.

It is argued that the appellants are not liable for the overdraft for the first fiscal year, because the former treasurer, who served part of the biennial period, had reduced the appropriation to such an extent that it was absolutely necessary to overrun the amount left to carry on the department. It appeared that the former treasurer, in the first half of his final fiscal year, had consumed in excess of half the money allotted for the year, leaving but little with which his successor was to conduct the office. The argument is an appealing one, but it encounters an insuperable difficulty. The Constitution forbids the expenditure of any money from the state treasury except in pursuance of appropriations made by

law. Section 230. The appropriation was reduced by the predecessor of the treasurer, but the actual overdraft was made by the defendant. The payments that exceeded the appropriation and for which no appropriation was ever made were made by Dishman, and we see no escape from the conclusion that for such a payment the treasurer and his surety are liable. If the department could not be run within the appropriation, the problem was necessarily addressed to the Legislature, and could not be solved by the expenditure of money not appropriated for the purpose.

It is pointed out that Dishman subsequently saved from the biennial appropriations for his department enough to cover his overdraft during the first year, and it is claimed he should have credit therefor. But when a sum is saved from an appropriation it belongs to the state and not to the treasurer, and there is no provision of law for the adjustment of the expenses for the four-year term with the budgets for the same period. The adjustment must be made for each biennial period, and an overdraft in one period could not be compensated by a surplus in a subsequent one. Shuck v. Coulter, 90 S. W. 271, 28 Ky. Law Rep. 817; Hager v. Shuck, 87 S. W. 300, 27 Ky. Law Rep. 957; Dickinson v. Clibourn, 125 Ark. 101, 187 S. W. 909; Leddy v. Cornell, 52 Colo. 189, 120 P. 153, 38 L. R. A. (N. S.) 918, Ann. Cas. 1913C, 1304.

It is conceded that the judgment included some items twice, and that it is excessive to that extent. The overdraft for the first six months included the additional amounts paid to the assistant treasurer above his statutory salary. The record shows that the assistant treasurer was paid out of the treasury appropriation for the first six months of 1924 the sum of $75 per month for five months, and $60 for one month, making a total of $435. This amount aided to bring about the overdraft and was embraced therein.

We find from the record no other duplication of items recovered. The commonwealth concedes that the judgment is excessive, but contends that it may be modified by crediting thereon, as of the date of entry, the sum of $435, plus the interest thereon that was included in the judgment without requiring a reversal of the judgment. But the amount actually due must be ascertained by a recalculation, and the appropriate procedure is to

248

reverse the judgment for a recalculation and re-entry of judgment in accordance with the correct principles, as herein declared. If this conclusion results in a hardship upon appellants, it is because the rigid requirements of the Constitution and the law were not pursued. This court has no alternative but to hold public officials to a strict accountability under the law, and even though the officer thought he was doing what was best for the commonwealth, and had the concurrence of the Attorney General at the time, the fact remains that in a government of law and not of men such an error of judgment on the part of an officer renders him civilly liable for any loss resulting to the commonwealth. Cf. Com. v. Dishman, 232 Ky. 686, 24 S. W. (2d) 568. City of Princeton v. Baker, supra. The equity of the case for Dishman addresses itself to the General Assembly, where power is vested to correct the omission to have an appropriation to cover the overdraft on the budget allowance to pay the lawful compensation for service actually rendered to the state.

The judgment is reversed, with directions to enter a judgment not inconsistent with this opinion.

Whole court sitting.