## Barnes, Director of Unemployment Compensation Commission, et al., v. Levy Bros., Inc.

Oct. 8, 1943.

Elwood Rosenbaum and O. B. Hannah, for appellants.

Milliken & Handmaker for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The Unemployment Compensation Statutes provide for the building up and maintenance of a reserve account by taxes levied on employers subject to the Act, based upon percentages of wages paid. For the year 1940 it was definitely stated to be 2.7 per cent and for subsequent years upon specified bases of calculation, dependent upon the percentum the balance, as of the computation date, bore to the aggregate taxable payroll for the preceding three years. Section 4748g-7, Kentucky Statutes; now, in part, KRS 341.270. If an employer's reserve account equaled or exceeded certain relative or comparative sums, as stipulated in that section of the statute, no further contributions or payments were required until the reserve became depleted. These various rates were to be established within certain limitations by the Unemployment Compensation Commission. An employer is expressly authorized to make voluntary contributions to his reserve account pursuant to general rules established by the Commission. Section 4748g-15(d), now KRS 341.530(4). The Commission promulgated the following as part of its rules:

"(1) Voluntary contributions made by a subject employer to his reserve account for the purpose of obtaining a reduced contribution rate for any given year must have been received by the Commission and credited to such reserve account on or before December 31 of the preceding year.

"(2) Such voluntary contribution when received from a subject employer and accepted by the Commis-

sion shall not be subject to a refund in whole or in part, nor shall it be used as a credit on any contributions which may be or may become due under Section 7 [now KRS 341.270] of the Kentucky Unemployment Compensation Law.''

Under authority of Subsection (c) (7) of Section 4748g-7, Kentucky Statutes, the Commission had prescribed December 31, 1941, as the date for determining rates applicable for the calendar year 1942. The Commission provided a form ''for reporting voluntary contributions and estimated contributions for the fourth quarter of 1941 by employers who, for the purpose of obtaining reduced rates, desire to have additional contributions credited to their reserve accounts before the determination of their rates for the calendar year 1942.'' This form made provision for reporting (1) the amount of compulsory contribution for the fourth quarter of 1941, and (2) the amount of any voluntary contribution. This latter provision carried the following note: ''Any amount paid as a voluntary contribution cannot be refunded in whole or in part, nor can it be used as a credit for past or future contributions which may be or may become due.''

On December 27, 1941, Levy Bros., Inc., sent in this form showing a remittance of $2,000 for the assessment or compulsory payment, and of $7,300 as a voluntary contribution. This, with a check for $9,300, was enclosed in a letter to the Commission. Excluding a paragraph stating the company's understanding with respect to the amounts of its reserve account, and giving amounts upon which the sums enclosed had been calculated, the letter is as follows:

''We are enclosing a check for ninety-three hundred dollars ($9300.00) with hopes that our experienced rating for the year 1942 will be reduced to zero.

''Would appreciate if you would recheck our figures before you accept this check, to see whether we are correct in our calculation. The figures are as follows: (omitted)

''Would appreciate your kind cooperation in checking our understanding and calculation before accepting this check as you can readily understand we would not want to make a contribution to the reserve fund unless we can reduce the rate to zero for the year 1942.''

The remittance was placed to the credit of Levy Bros.' reserve account before computation was made.

Thereafter the Commission determined that the $7,300 was not sufficient, and on April 25, 1942, required Levy Bros., through a compulsory assessment, to remit an additional sum for the first quarter of 1942 and has continued to make such assessments. Levy Bros. demanded the return of the $7,300 which it had paid on December 27, 1941, because the Commission had found that it was not sufficient to entitle the company to the "zero" rating. The demand being refused, Levy Bros. brought this suit to recover that sum, based upon the ground that the Commission had no right to accept or retain the payment upon determining its insufficiency. That is the appellee's essential argument here, namely, that it was a conditional tender or offer and when the condition did not materialize, the voluntary contribution should have been returned.

The appellants contend that the language of the letter is no more than a request of the Commission to check the accuracy of the calculations, especially when the letter is read in the light of the note contained in the form for reporting the payment of voluntary contributions above quoted, that "it cannot be refunded in whole or in part." We think the letter was a clear expression of intention that the voluntary payment was conditioned upon the amount bringing the reserve account to the status that would avoid a required payment in the succeeding year. The form and the letter must be read together. The printed form was for general use while the letter enclosing it was the immediate and specific language of the writer, containing terms or qualifications. Such is the primary reason for the well established rule that where part of a contract is written and part printed and there is an apparent inconsistency or reasonable doubt as to the meaning of the whole, the particular writing controls. 12 Am. Jur., Contracts, Section 253; Northern Coal & Coke Company v. Bates, 146 Ky. 624, 143 S. W. 13. That rule for construing contracts must be applied in construing a remittance for the payment of certain obligations.

It is the position of the Unemployment Compensation Commission and its Executive Director that for an employer to derive any benefit it is necessary that such voluntary payment be actually credited to his reserve ac-

count on or before the computation date. After such completed credit it would then be determined whether on the computation date of December 31st it was sufficient to relieve the taxpayer of required payments in 1942 under the terms of Section 4748g-7, Kentucky Statutes, prevailing at the time, now KRS 341.270(6); likewise, under the Commission's rules above quoted. The point seems to be that there can be no mere tender or offer. We do not follow the argument. At any rate, we think the statute contemplated no such extreme construction or exaction, nor that the Commission might make an enforceable rule of that character. After a remittance has been received, it is at least constructively credited, and where voluntarily made on condition it is both constructively and conditionally in the account. The statute did not undertake to extend any right or authority to the Commonwealth or its bureau to deal unreasonably or unfairly or unjustly with the taxpayers.

There is no merit in the contention of the appellant that it would have entailed too great if not an impossible burden upon the Commission to make the necessary calculations and determine the exact reserves in three days, or perhaps a shorter period, intervening between a remittance by a taxpayer and the computation date of December 31st. We do not think it was necessary that such calculations should have been made before that date. When in reasonable and due course (as in fact it was) it was found that the reserve when augmented by the conditional remittance was not sufficient for the purpose contemplated, fair dealing demanded that the taxpayer be so advised and its money returned upon demand.

It is the further position of the appellants that such payments are not refundable under the particular statute; hence, the general rule that taxes paid cannot be recovered is applicable. It was provided in Section 4748g-8, Kentucky Statutes, as it is in KRS 341.330, that: "Not later than two years after the date on which any contributions or penalties were paid, an employing unit which has paid such contributions or penalties may make application for an adjustment in connection with subsequent contribution payments, or for a refund thereof because such adjustment cannot be made. If the commission determines that such contributions or penalties or any portion thereof were erroneously collected, the commission shall allow the employing unit to make an adjustment thereof, without interest, in connection with subsequent

contribution payments by it; or, if such adjustment cannot be made, the commission shall refund the amount, without interest, from the fund. For like cause and within the same period adjustment or refund may be so made on the commission's own initiative."

Since Section 4748g-3, Kentucky Statutes, as does KRS 341.020(3), defined "contributions" as used in the act to mean money payments to the unemployed insurance fund "required" by the act, the appellants construe the above quoted section as not embracing voluntary payments but to be confined to compulsory payments. This also is too narrow a construction of the law. The section authorizing refund expressly covers "any contributions" erroneously collected. It is not believed that the legislature intended that the commonwealth and its commission could keep a citizen's money when freely and voluntarily made conditionally, while they must refund compulsory collections erroneously exacted.

We are of opinion, therefore, that the judgment in favor of the appellees should be, and it is, affirmed.