# Department of Finance et al. v. Dishman.

Nov. 10, 1944.

546

Hubert Meredith, Attorney General for appellants.

Leslie W. Morris for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER
—Affirming.

The question is the constitutional validity of a resolution of the General Assembly appropriating $2,214.91, with interest, to "reimburse and pay to Edward B. Dishman the moneys expended by him in the discharge of the duties of the office of State Treasurer while he was Treasurer of the Commonwealth and which he was compelled to pay personally." Chapter 235, Acts of 1942. The circuit court adjudged the appropriation to be valid and directed its payment.

The preamble of the resolution is as follows:

"Whereas, Honorable Edward B. Dishman was Treasurer of the Commonwealth of Kentucky from January, 1924, to January, 1928, and

"Whereas, a civil judgment was recovered against him, which required him to pay out of his personal funds the said sum of Ten Thousand, Seven Hundred and Twenty-seven and 38/100 Dollars ($10,727.38) on the 26th day of October, 1932, and

"Whereas, the Court of Appeals in passing upon the civil matter said:

" 'The equity of the case for Dishman addresses itself to the General Assembly, where power is vested to correct the omission to have an appropriation to cover the overdraft on the budget allowance to pay the lawful compensation for service actually rendered to the State.'

"And whereas, the said overdraft of the budget occurred through no misuse of funds, and was paid by the Honorable Edward B. Dishman personally."

The quotation is from our opinion in Dishman v. Coleman, Auditor, 244 Ky. 239, 50 S. W. 2d 504. As disclosed there, the Commonwealth recovered a judgment for $7,939.04 principal, plus interest, against Dishman and the surety on his official bond covering four classes of overdrafts or withdrawals from the treasury in excess of appropriations for the payment of salaries and expenses of the Treasurer's office. It appears the excess expenditures were made under a misconstruction of the statutes and, in part, a sense of absolute necessity in order that the office might function. Such part was used upon advice of the Attorney General. We held the judgment to be proper except for some duplications, for which we remanded the case for recalculation. In doing so we said:

"This court has no alternative but to hold public officials to a strict accountability under the law, and even though the officer thought he was doing what was best for the commonwealth, and had the concurrence of the Attorney General at the time, the fact remains that in a government of law and not of men such an error of judgment on the part of an officer renders him civilly liable for any loss resulting to the commonwealth."

Dishman satisfied the corrected judgment rendered against him by paying the amount to the Commonwealth.

In this suit to compel the State Department of Finance to pay the money appropriated by the 1942 Resolution, he pleads the facts substantially as related in our opinion and the subsequent developments.

One of the four classes of unauthorized payments, aggregating $2,214.91 in excess of the budget appropriation, covered running expenses of the Treasurer's office. This was made necessary, it was claimed, by the fact that Dishman's predecessor during the six months he served had consumed more than two-thirds of the appropriation for the first fiscal year which ended June 30, 1924. Dishman was therefore compelled to operate his office for a half-year on less than one-third of the annual appropriation. It is that item for which the present appropriation was made.

This court in its opinion recognized the fact that the deficit out of which the unauthorized expenditure arose was due to the omission of the Legislature to appropriate sufficient funds to cover legitimate governmental expenses and that the equity of the case was with the former treasurer. Although obiter dictum, we stated that the Legislature had power to remedy the condition by a retroactive appropriation. The General Assembly has recognized all this not only by the enactment but by an express statement. The Governor in approving the resolution and appropriation likewise recognized it. Therefore, we are met at the threshold of our consideration of the constitutional validity of the refund with declarations of merit on the one side and of moral obligation on the other by all three of the departments of government. Under such extraordinary circumstances it ought to be very clear that the action of the Legislature is contrary to the spirit and intent of every constitutional provision before it is struck down. Certainly, no narrow or strained construction should be given if another decree is justifiable.

Provisions of the Constitution should be interpreted to subserve the purpose for which they were adopted and to that end the evil intended to be remedied or avoided is a proper consideration. A technical or literal construction that would defeat the purpose is not to be given, and reasonable doubts must be resolved in favor of the constitutionality of an Act. Louisville School Board v. King, 127 Ky. 824, 107 S. W. 247, 32 Ky. Law Rep. 687, 15 L. R. A., N. S. 379; Board of Education v.

City of Louisville, 288 Ky. 656, 157 S. W. 2d 337; State Journal Co. v. Commonwealth, 289 Ky. 808, 160 S. W. 2d 145.

We cannot agree with the argument of the Attorney General (in office when this case was practiced and briefed) that the appropriation is within the restrictions of both Section 58 and Section 171 of the Constitution.

The former section declares:

"The General Assembly shall neither audit nor allow any private claim against the Commonwealth * * * but may appropriate money to pay such claim as shall have been audited and allowed according to law."

This limitation on the power of the Legislature relates to a private claim as distinguished from a claim for compensation for services rendered or reimbursement of money paid personally for a public purpose. Thus in Pennington v. Shannon, Auditor, 270 Ky. 142, 109 S.W. 2d 389, we held valid a resolution of the General Assembly making refund to a sheriff of money spent by him without authority of the statute in going to a distant state with a requisition from the Governor and bringing back a fugitive from justice, because the expense had been incurred for a public purpose, beneficial to the Commonwealth.

The part of Section 171 invoked is that which declares that: "Taxes shall be levied and collected for public purposes only." This is closely connected with the terms of Section 58. Once it is said that the appropriation is for a public purpose, it must be said that it may be paid out of the revenues derived from taxes. The same argument was made in the Pennington Case. Citing and quoting from Board of Education of Calloway County v. Talbott, Auditor, 261 Ky. 66, 86 S. W. 2d 1059, we pointed out that if the appropriation might have been made in the first instance or made to compensate or indemnify a public officer upon a just and moral claim for public services or refund of expenditures for public purposes, it is a proper appropriation of the revenues of the state.

We come to the argument that the resolution is special legislation and as such offends Section 59 of the Constitution. The material portion of that section is as follows:

"The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: * * *

"Thirteenth: To legalize, except as against the Commonwealth, the unauthorized or invalid act of any officer or public agent of the Commonwealth, or of any city, county or municipality thereof.

"Fourteenth: To refund money legally paid into the State Treasury."

The appellant presses upon us that this resolution is within the fourteenth clause of the section and that it is an insurmountable obstacle in the way of legitimate legislation to reimburse the former Treasurer. The appellee insists that the appropriation is within the permission of the thirteenth clause and that the fourteenth must be read with it; also, that standing alone the fourteenth clause does not cover this situation.

Everyone abhors special privileges in government. The aim and purpose of Section 59 of the Constitution is to prevent that evil, to bar favoritism and discrimination, and to insure equality under law. This section and this construction are in accord with Section 3, a part of our Bill of Rights, declaring that in social compacts all men are equal and there may be no grant of exclusive, separate public emoluments or privileges to any man or set of men except in consideration of public services. The effect of the resolution under attack was merely to validate the invalid act of the former treasurer in exceeding the appropriation for the conduct of his office, apparently as a matter of governmental necessity, and to make a retroactive appropriation for the deficit.

It is not to be supposed that in restricting special legislation upon the subjects and purposes listed the Constitutional Convention in framing it or the people adopting it had in view any intention to deny the Legislature the power to authorize the payment of a just and equitable claim, founded upon public service and producing public benefits, when the power existed in the first instance to authorize that expenditure; nor even to make a special deficiency appropriation to refund money paid personally by an officer for a public purpose. Indeed, it seems to be conceded by the Commonwealth here that it would have been a legitimate exercise of power to authorize the refund of money to the former Treasurer had he

borne the expenses personally and had sought reimbursement. As stated in Board of Education of Calloway County v. Talbott, Auditor, 261 Ky. 66, 86 S. W. 2d 1059, 1063:

"The Legislature may make an appropriation in recognition of moral or equitable obligations, such as a just man would be likely to recognize in his own affairs, whether by law he is required to do so or not. 'Taxation to raise money to pay a claim based on a moral obligation, and not enforceable at law, is for a public purpose, and is proper unless forbidden by some constitutional provisions.' Cooley on Taxation, vol. 1 (4th Ed.) sec. 194, page 412. * * * A 'moral obligation' means that some direct benefit was received by the state as a state or some direct injury has been suffered by the claimant under circumstances where in fairness the state might be asked to respond, and there must be something more than a mere gratuity involved."

The point of the appellants' argument really is that Dishman spent the state's money and was required by law to pay it back into the treasury; therefore, under the fourteenth clause of Sec. 59 of the Constitution it cannot be refunded. This is indeed a razor-edge construction when considered in relation to the facts of this case. Let us state the account. Dishman paid the sum out of the treasury to third persons for clerical hire and office expenses. He then personally replaced the money in the treasury. The result is that he is out of pocket $2,-214.91 for having paid benefits which the state has received and not paid for. It is a weak thread upon which to hang the argument that the Legislature is merely refunding money to him out of the state treasury which he paid into the treasury. There is harmony in reading the thirteenth and fourteenth subsections together and applying them to the facts. The thirteenth clause clearly authorized the resolution, for it has been held that the Legislature may legalize as against the Commonwealth an unauthorized or invalid act of an officer or agent of the state and pay a claim for expenses incurred for the use and benefit of the state for which there was no authority when done or incurred. Commonwealth v. Haly, 106 Ky. 716, 51 S. W. 430. 21 Ky. Law Rep. 666; Carroll v. Bosworth, 151 Ky. 337, 151 S. W. 916; Pennington v. Shannon, 270 Ky. 142, 109 S. W. 2d 389. Is this power to be denied by the fourteenth clause merely because the of-

ficer paid back the money under a judgment declaring there was no authority of law for the expenditure when made? Standing alone, the fourteenth classification of barred special legislation would seem to mean that there can be no special refund of taxes or revenues or sums owing the Commonwealth of any kind which have been paid into the treasury and become a part of the resources used or available for use in the operation of the government without any obligation to refund and as a matter of gratuity for which the State has received nothing. Notwithstanding that provision or such an interpretation of it there may be a recovery of illegal taxes by a judicial proceeding when they were paid under compulsion (Coleman v. Consolidated Realty Co., 239 Ky. 788, 40 S. W. 2d 387), or in cases of unemployment compensation taxes paid conditionally (Barnes v. Levy Bros., 295 Ky. 794, 175 S. W. 2d 495), or under mistake of fact. Barnes v. Stearns Coal & Lumber Co., 295 Ky. 812, 175 S. W. 2d 498. Furthermore, the construction of the constitutional provision with respect to special legislation permits the Legislature to right an individual wrong as is exemplified by its rights to pay an individual claim based on contract (Commonwealth v. Haly, supra), or for personal injuries or to authorize suits and payment of judgments for such injuries sustained by the tort of an officer or employee of the state. Daniel's Adm'r v. Hoofnel, 287 Ky. 834, 155 S. W. 2d 469.

We are of opinion the Resolution is a valid and constitutional exercise of legislative power. The judgment is, therefore, affirmed.

Judge Tilford, dissenting.

Whole Court sitting.

The considerations which have impelled me to dissent from the conclusions of the majority of the members of the Court in this case may be stated as follows:

The appellants in their answer to appellee's petition seeking to enforce payment of the sum voted him by the Legislature in the resolution quoted in the majority opinion, denied that the appropriation was to reimburse appellee for monies expended by him while State Treasurer in the discharge of the duties of his office; and affirmatively alleged:

"* * * that all payments made by the said Dishman as Treasurer covering the expenses of the operation of

his office from January, 1924, to January, 1928, were made, not from his personal funds, but altogether from and with the monies of the Commonwealth of Kentucky, same having been paid out of said monies of the Commonwealth from the Treasury of the Commonwealth of Kentucky.

"* * * that while he was Treasurer of the Commonwealth of Kentucky from January, 1924, to January, 1928, the said Dishman overspent the appropriations which were made to his department to cover the expenses of the operation of his office, including his own salary, the salaries of his assistants and helpers and other expenses incidental to the conduct of the office. Said expenditures in excess of the amount allowed by law for the operation of his office as aforesaid were as follows: (Here follow items not involved in this controversy.)

" * * * After he was out of office the Commonwealth sued and recovered of him the sums mentioned in the next preceding paragraph because he had expended said sums from the Treasury illegally and without right. The action in which said recovery was had was appealed to the Court of Appeals of Kentucky and the opinion of this Court in said action will be found in 244 Ky. at page 239, 50 S. W. 2d at page 504. Said opinion is hereby referred to and made part hereof.

"The judgment which was drawn pursuant to the opinion was paid by Dishman to the Commonwealth of Kentucky on October 26, 1932. The $2,214.91 mentioned in the petition and in the resolution filed with the petition was included in the payment of said judgment. The only money paid to the Commonwealth by the said Dishman was paid in discharge and satisfaction of said judgment and constituted a refund by him to the Commonwealth of Kentucky of monies which he had illegally caused to be paid out of the Treasury of the Commonwealth of Kentucky. The payment of said judgment to reimburse the Commonwealth for money which he had illegally caused to be expended and paid out of the Treasury is the only way and manner in which the said Dishman paid or furnished to the Commonwealth of Kentucky any part of the $2,214.91 mentioned and sued for in the petition herein."

The answer concluded with the assertion that the resolution directing appellee's reimbursement violated Subsection 14 of Section 59, and Sections 58 and 171 of the Constitution of Kentucky. The Chancellor sustained

appellee's demurrer to the answer, and upon appellants declining to plead further, rendered judgment in accordance with the prayer of the petition.

As I view the purpose of the resolution, Sections 58 and 171 of the Constitution are not relevant to the controversy, but Subsection 14 of Section 59 on its face is controlling. Section 59 forbids the General Assembly to "pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: * * *

"Thirteenth: To legalize, except as against the Commonwealth, the unauthorized or invalid act of any officer or public agent of the Commonwealth, or of any city, county or municipality thereof.

"Fourteenth: To refund money legally paid into the State Treasury."

I have included Subsection 13 in the quotation because of appellee's argument that it, and not Subsection 14, controls; and because of appellants' reply that Subsection 14 limits the applicability of Subsection 13 to those claims, the validating of which would not involve the refund of money theretofore paid by the claimants into the State Treasury.

Appellee's argument that Subsection 13 authorized the relief attempted to be extended him by the Legislature is predicated largely upon the decisions of this Court in the cases of Carroll v. Bosworth, State Auditor, 151 Ky. 337, 151 S. W. 916; Board of Education of Calloway County et al. v. Talbott, Auditor, 261 Ky. 66, 86 S. W. 2d 1059; Pennington v. Shanon, Auditor, 270 Ky. 142, 109 S. W. 2d 389.

In the Carroll case we held that the language of Subsection 13 expressly authorized the Legislature to legalize or validate as against the Commonwealth the unauthorized or invalid acts of its officers or agents. In the Calloway County Board of Education case, we held that while the Legislature has power to make an appropriation in recognition of a moral or equitable obligation, "such as a just man would be likely to recognize in his own affairs, whether by law he is required to do so or not" (261 Ky. 66, 86 S. W. 2d 1063), it was without power to make such an appropriation when the particular object sought to be accomplished was forbidden by the Constitu-

tion. And in the Pennington case, citing the cases referred to, we held that the General Assembly, by resolution, had the power to appropriate money for the benefit of a sheriff who had expended his own funds in returning to Kentucky a criminal extradited from a distant state. As in the Calloway County Board of Education case, the Court held that the Legislature had the power to make an appropriation "for whatever purposes taxes may be laid"; and since the expenditures for which the officer was to be reimbursed by the appropriation were made by him for the benefit of the public, the act of the General Assembly was not violative of Section 171 of the Constitution which prohibits the collection of taxes except for public purposes, or of Section 58 which relates to the auditing and allowance of private claims.

Appellee's argument, based mainly upon the cited cases, may be summarized as follows:

1. The expenditures made by appellee were made for public purposes, since they enabled the Treasurer's office to continue functioning and resulted in no private gain to appellee, whose actions throughout were guided by the utmost good faith. Hence, Section 58 of the Constitution does not militate against the validity of the appropriation.

2. Although the expenditures were not made by appellee from his own funds, the fact which distinguishes this case from the Pennington case, his satisfaction of the judgment requiring him to restore to the State an amount equivalent to the expenditures made from the State Treasury in excess of the appropriation placed him in the same position he would have occupied had he expended his own money in the first instance, as did Pennington.

3. The Legislative act in question was not an act to refund money legally paid into the State Treasury, since "refund," according to the dictionaries, means "to pay back; return, restore, repay"; and the purpose of the Legislature was to recognize and discharge a moral obligation to reimburse appellee for the money he had expended for the Commonwealth's benefit.

I agree with the majority opinion that Section 58 of the Constitution does not invalidate the resolution, since that Section relates to claims of a different type; and, except as to the restraint upon the Legislature's

power to relieve him, resulting from his payment of the money into the State Treasury, I agree with his second contention. It should, however, be noted that if he had expended his own money in the first instance, he would not have violated Section 230 of the Constitution which prohibits the withdrawal of money from the State Treasury, "except in pursuance of appropriations made by law," although, since he acted on the advice of the Attorney General in so doing, his violation of Section 230 would not, upon moral grounds, justify the Court in withholding any relief within its power to grant. Nor do I believe that the purpose of the Constitution framers in prohibiting the refund of any money lawfully paid into the State Treasury was punitive. Their purposes were doubtless practical, and designed to prevent favoritism, waste, and confusion. However, if they foresaw an occurrence of events identical with those which gave rise to this litigation, it is possible that Subsection 14 of Section 59 was adopted to discourage public officials from spending unappropriated funds by making it impossible for the Legislature to afford relief after the fact had been adjudicated and the money restored to the State. But, whatever their purpose, I see no escape from the effect upon appellee's present claim of the language employed. The money which he paid into the State Treasury was paid in obedience to a judgment directed to be entered by the State's highest Court, and it is idle to argue, as appellee has by his third contention, that the legislative act, notwithstanding its omission of the word, did not authorize a "refund."

That the rewards of public service in Kentucky are meagre and its hardships many, I am only too well aware. I also realize that our inadvertent statement in the case of Dishman v. Coleman, Auditor, 244 Ky. 239, 50 S. W. 2d 504, 508, that "the equity of the case for Dishman addresses itself to the General Assembly" but added to his difficulties and misled that body as to its powers. But the preservation of our form of government demands that constitutional mandates be obeyed, irrespective of the individual hardships which may ensue, and the meaning of the broad language of the clause invoked by the former attorney general to defeat appellee is, to me, unmistakeable.

I am authorized to say that Judges Thomas and Sims join with me in this dissent.