FRANKLIN DeKLEINE CO. *v.* BOARD OF STATE AUDITORS.

1. STATE—PRINTING. CONTRACTS—MIMEOGRAPH—MULTILITH—MANDA-
MUS.

Holder of contract for State printing and binding, *held,* entitled
to writ of mandamus to compel State officials to turn over to
plaintiff such printing and binding as contract calls for but
not printing by mimeograph, multilith, multigraph duplicator,
or other instrument that can be operated in an office not de-
voted to printing or binding.

2. COSTS—STATE PRINTING CONTRACTS—MANDAMUS.

No costs are allowed in mandamus proceeding to compel board of
State auditors to place printing and binding orders with holder
of contract for State printing, a public question being in-
volved.

Petition by Franklin DeKleine Company, a Michi-
gan corporation, for a writ of mandamus to com-
pel the Board of State Auditors, Murray D. Van
Wagoner, State Highway Commissioner, and others
to place certain printing with the plaintiff. Sub-
mitted March 21, 1939. (Calendar No. 40,181.)
Writ granted in part June 5, 1939. Rehearing de-
nied September 6, 1939.

*Hubbard & McCullough,* for plaintiff.

*Thomas Read,* Attorney General, and *Edmund E.
Shepherd,* Assistant Attorney General, for defend-
ants.

WIEST, J. The board of State auditors contracted
with plaintiff to do all the printing and binding or-
dered by the State.

In this proceeding plaintiff seeks our writ of mandamus directing the board of State auditors "to place all orders for printing and binding submitted to them by the heads of the various State departments or commissions with the plaintiff herein, * * * during the life of the contracts."

The defendants suggest immunity of the sovereign State and contend that the terms of the contracts do not require what plaintiff asks.

Instead of sending matter to plaintiff, various administrative departments have installed multilith machines and equipment and employ the same in preparing publications formerly printed matter.

The suggestion of immunity has no merit. This is a proceeding to require State officers to comply with provisions of law, and this the humblest citizen may invoke, and the fact that private rights are involved does not in the least bar direction to State officials to observe the mandates of the Constitution and statutory enactments.

The board of State auditors points to the clause in the contracts under which plaintiff agreed to do all the printing and binding ordered for the State and contends that this limits printing and binding by plaintiff to such as is ordered done by the board.

This is not allowable and, if permitted, would constitute the mandate requiring all State printing to be done under contract nugatory. Under such mandate the contract carries, though not written therein, the provisions of positive law governing its purpose and scope.

Issues of fact raised by the pleadings were referred to the circuit court for the county of Ingham to take proofs thereon and report findings. Under the proofs the circuit judge found:

"It appears that the board of State auditors, the civil service commission, and the Michigan unem-

ployment compensation commission have two, each, of the multilith presses or machines; and that the State highway department, the State conservation department, the liquor control commission, the State health department, and the Michigan State police, each, have one. Said machines are now in use, being operated by State employees assigned thereto.

"In certain instances State departments have ordered one copy of desired printed material from the plaintiff and then have reproduced same on a plate and by the employment of the multilith machines the necessary number of copies have been produced within the department. Plaintiff contends that the operation of the multilith machines or press is actually printing, while defendants deny that such is the case.

"There are three general kinds or classes of printing known to the trade and in general use, namely: relief or letter press printing, intaglio printing and offset printing. The exact nature of the first two classes is apparently not in any way involved in the present controversy. In offset printing the projection is from a plate, the image to be reproduced being on the surface thereof and slightly projected by ink placed thereon. The printing is not done directly from the plate but the image is transferred to a rubber blanket and thence to the paper or other substance used to receive it. The plate, which may be produced in various ways, is a necessary part of the process. The conclusion seems to be justified that such method of printing is in common use, and that such was the fact prior to the adoption of the present State Constitution.

"Various types of machines intended for use in offset printing are manufactured and used in the United States. Plaintiff employs the so-called Harris press. The method of operation of the multilith presses, or machines, installed in the various State departments above referred to is essentially the same in principle as the method involved in the use of the Harris press and other machines used in offset

printing. In other words, the principle of the multilith machine is essentially that of offset printing generally. The use of the plate is an essential part of the process. The production of pamphlets, forms, cards, labels, et cetera, on the multilith press is, in fact, production by the offset printing method.

"In certain instances, during the continuance of the contracts above referred to, printing has been ordered by certain State departments from printers other than the plaintiff. Exhibit 22, a so-called 'Assessors Manual' containing 194 pages, was printed by Edwards Brothers, Inc., of Ann Arbor. During the year 1938 the department of State placed certain orders for printing with the firm of Beurmann-Marshall, Inc., of Lansing. No claim is made, at least so far as the proofs are concerned, that these items were not covered by plaintiff's contracts, nor that plaintiff was not ready, willing and able to do the required work. The department of health during 1938 also put out two bulletins,  *  *  *  produced within the department by the use of the multilith press.

"The binding of exhibit 22 was done by Edwards Brothers, Inc., and the pamphlets put forth by the health department  *  *  *  were wholly prepared in that department, or at least plaintiff had nothing to do with their preparation."

No exceptions having been filed to the findings, both parties are bound thereby.

Prior to the Constitution of 1850, the law provided for the office of State printer. The Constitution of 1850, art. 4, § 22, abolished that office by requiring that:

"The legislature shall provide by law that the furnishing of fuel and stationery for the use of the State, the printing and binding the laws and journals, all blanks, paper and printing for the executive departments and all other printing ordered by the legislature, shall be let by contract to the lowest bidder or bidders."

Act No. 163, Pub. Acts 1851, provided for such contracts.

The Constitution of 1908, art. 5, § 25, provides:

"Fuel, stationery, blanks, printing and binding for the use of the State shall be furnished under contract or contracts with the lowest bidder or bidders who shall give adequate and satisfactory security for the performance thereof. The legislature shall prescribe by law the manner in which the State printing shall be executed."

Act No. 12, Pub. Acts 1903, as amended by Act No. 7, Pub. Acts 1933 (Stat. Ann. § 4.251), provides for advertising by the board of State auditors for

"sealed proposals for printing and binding the laws, journals and documents, all blanks, papers and printing for the legislative, executive and judiciary departments, and all other printing ordered by the legislature, * * * and * * * contracts shall be awarded to the lowest and best responsible bidder or bidders."

Act No. 135, Pub. Acts 1903, as amended by Act No. 111, Pub. Acts 1919, 1 Comp. Laws 1929, §§ 473, 474 (Stat. Ann. §§ 4.272, 4.273) provides:

"Sec. 2. It shall hereafter be the duty of the chief or head of each State department, or his deputy, or any employee authorized by him, to submit to the board of State auditors any and all requisitions for stationery and paper and the printing and binding thereof, whether for the current use of said department or for the printing and binding of such reports as may be required by law to be issued, and requisitions for all printing and binding for such departments, and said board shall thereupon furnish to the State printer or binder with whom the State may at such time have a contract, the necessary orders for doing such work. * * *

"SEC. 3. The said board of State auditors shall audit and allow only such bills for stationery, for paper, or for printing and binding for any of said State departments as is furnished in accordance with the provisions of this act."

The board of State auditors accepted plaintiff's bid for the State printing. Under the contract plaintiff has the right to such printing, including such as would require printing except for use of the multilith machines.

The statute requires the printing be done under contract. The contract was made in compliance therewith and its terms and purpose cannot be changed by employment of multilith machines.

If such new method is desirable it is because it cuts down the expense of otherwise printing, and such lessened printing is the very reason why it may not be done in the face of the mandatory statute and contract entered into thereunder. If the statute and the provision in the Constitution should be adjusted to more modern ways and means, the way is not by administrative action or judicial fiat.

Under the findings of the circuit judge various administrative departments of the State are, by use of the multilith machines, doing printing which, under the contract, should be done by plaintiff.

Under the statute the board of State auditors has sole charge of all printing for the State, as each department must obtain its printing through that board. The board must contract for all such printing as it deems necessary to supply department needs. The language in the contract relative to orders for printing does not mean that what the board does not order done under the contract may be done otherwise, but that the board shall have done under the contract all printing found necessary by the

board for the administrative departments. It follows that printing which should be done under the contract is being done by the State in violation of the statute and of the contract with plaintiff. No printing can be done by or in behalf of the State unless ordered by the board of State auditors, and all printing for the State so ordered must be under contract, and plaintiff has such contract.

The writ should issue. No costs.

BUSHNELL, SHARPE, and POTTER, JJ., concurred with WIEST, J.

BUTZEL, C. J. I do not agree with the opinion granting mandamus in so far as it prevents respondents from doing printing by mimeograph, multilith, multigraph duplicator or other instrument that can be operated in an office not devoted to printing or binding. Both the constitutional provision and the statutes cited in the foregoing opinion were, I believe, for the purpose of giving State printing and binding to the lowest bidder or bidders who could present adequate and satisfactory security for the performance of the work. Art. 4, § 25 of the Constitution of 1908 must be interpreted in the light of the circumstances from which it sprung. Its whole tenor indicates that it sought to eliminate the possibility of favoritism or patronage in securing contracts for services and supplies to the State and to secure such goods and services at the lowest possible cost to the public. The article was not designed to put the State in a strait-jacket so that it could not print or make manifold copies of its records and documents by machines in its own offices. "State interest is the chief consideration in all these transactions" (*Detroit Free Press Co.* v. *Board of State Auditors,* 47 Mich. 135, 145), and when that interest, administrative con-

venience, economy or other factors dictate the purchase and installation of various reproducing machines for State offices, we should be slow to construe as an inhibition on such action language which relates to the letting of contracts, a quite different procedure from that which has been followed.

Particularly is this true where petitioner's contract was simply for such printing and binding as might be ordered by the State from outside contract printers and binders. Petitioner's own voluntary agreement with the State does not go as far as the right it now asserts. Incidentally, the record discloses nothing that would impugn the good faith of the various State departments in arranging for their own printing by the methods here involved.

Petitioner may properly enforce its right to do such printing as it was hired to perform under the contract, and a peremptory writ will issue to that effect. But neither the language of the agreement nor of the Constitution entitled petitioner to more than that. The question being a public one, no costs will be allowed.

CHANDLER, NORTH, and MCALLISTER, JJ., concurred with BUTZEL, C. J.