# State Journal Co., Inc., v. Commonwealth.

March 13, 1942.

Milliken & Handmaker for appellant.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Claiming that by virtue of its contract to furnish the "first class" printing of the Commonwealth and the constitutional provision and statutory enactments, pursuant to which the contract was executed, it is entitled to print and charge for various departmental forms and other documents produced in several of the State departments through the use of multilith and multigraph machines, the appellant instituted this action for a declaration of its rights and an injunction protecting them.

The gravamen of the complaint is:

"* * * that said printing so done by said Department and Commission, as hereinbefore set out, constitutes a material and substantial part of the first class printing of the Commonwealth of Kentucky, covered by said contract above set out, and that the volume thereof in money amounts to many thousands of dollars, and that the plaintiff is deprived of a substantial amount of profit on said printing, amounting to several thousands of dollars."

The immediate source of appellant's asserted title to the profits on all printing of the first class done by or for the various branches of the State Government is, of course, its contract which recites that in consideration of its "bid and bond," the Commonwealth has let to it that work:

"* * * which work consists, as provided in the Kentucky Statutes, of the printing of all bills for the two houses of the General Assembly, together with such resolutions and other matters as may be or-

dered by the two houses, or either of them, to be printed in bill form; * * * and all miscellaneous printing and binding necessary for the several departments, including the Department of Education, and not otherwise provided for in this law, or any other law, and which is known and designated under the Statute as belonging to the first class;''

The contract derives its force from the provisions of Chapter 105 of the 1936 compilation of the Kentucky Statutes embracing Sections 3953 to 3990, inclusive; and since it is conceded that the contract was executed in strict conformity with the Statutes, and neither they nor the contract purport to confer upon appellant any greater rights than those authorized by Section 247 of the Constitution, pursuant to which the Statutes were enacted, it is unnecessary to set forth in detail the terms of the contract or Statutes, or to decide whether appellant's rights are limited by any of the terms therein contained. Section 247 of the Constitution, on the interpretation of which appellant's rights inevitably depend, provides:

''The printing and binding of the laws, journals, department reports and all other public printing and binding shall be performed under contract, to be given to the lowest responsible bidder, below such maximum and under such regulations as may be prescribed by law. No member of the general assembly or officer of the Commonwealth, shall be in any way interested in any such contract; and all such contracts shall be subject to the approval of the governor.''

The right of the appellant to institute the action against the defendants named, and the propriety of the procedural methods employed, were questioned by the Commonwealth, but in view of the conclusions reached it will not be necessary to pass upon these questions.

The Chancellor sustained a general remurrer to the petition and dismissed it by a judgment in which he declared the rights of the parties, holding:

(1) ''* * * 'printing and binding' means a cojoined process and as used in the Constitution and statutes was only intended to apply to material such as laws, journals, department reports and other

matter required to be printed and bound in a single or cojoined operation to make the finished product. * * *''

(2) That the Departments of the Commonwealth were authorized to operate multilith, multigraph, and similar devices ''to perform such duplicating or minor printing services'' as might be deemed necessary ''so long as the material and forms, etc. duplicated upon said types of office equipment shall not be also bound into volumes, or books, or reports, or journals, as described in Section 247 of the Kentucky Constitution and Sections 3954 and 3956 Kentucky Statutes. * * *''

(3) ''That the contract which the plaintiff has with the Commonwealth of Kentucky to do the 'printing and binding of the laws, journals, department reports and all other printing and binding,' is for the benefit of the Commonwealth of Kentucky, and that under the terms of said contract the plaintiff is only entitled to do such 'printing and binding' as the Commonwealth of Kentucky in good faith sees fit to give it, and that the contract could only be breached by the Commonwealth if it attempted to have some other person, firm or corporation to do printing and binding which by the terms of said contract the plaintiff was required to perform. * * *''

In connection with his second finding, the Chancellor stated:

''It is the opinion of the Court that the method of duplication employed in the operation of multilith, multigraph and other similar devices is an entirely different process than that engaged in by plaintiff in the operation of its printing plant, and as the term 'printing' was understood at the time of the adoption of the Kentucky Constitution and the enactment of the statutes in question; that both multilithing and multigraphing are new scientific discoveries and inventions made after the adoption of the Constitution and the statutes in question.''

As supporting his third finding the Chancellor cited the following provision in appellant's ''Supplement to Proposal for Printing and Binding'':

''It is understood, however, that no given volume of business is guaranteed or implied under this contract.''

We deem it unnecessary to comment upon the Chancellor's findings further than to say that in our opinion appellant's right to furnish printing is not limited to that which is required to be bound; and that we do not regard as of controlling importance the quoted provision from the supplemental proposal accompanying appellant's bid. We may concede that the reproduction of copies by multilithing or multigraphing is, as contended by appellant, "printing" within the broader definition of that term; yet it does not follow that we must so define the term as it is used in Section 247 of the Constitution. While the Constitution should be strictly construed in order to preserve to the people the benefits, actual or supposed, discernible by its framers, this principle does not require the literal interpretation of words, the definition of which embrace subsequently invented or developed processes, the inclusion of which would benefit the few at the expense of the many whose interests the provision was presumably designed to conserve. Furthermore, we think it unnecessary to dwell upon the effect of Kentucky Statute 4618-89 which authorizes the Division of Purchases and Public Properties to "provide such duplicating and minor printing services to other agencies as can practicably and economically be rendered by means of available types of office equipment"; since its obvious controlling effect upon appellant's subsequently awarded contract can be avoided only in the event it is unconstitutional, as contended by appellant, a question dependent for its solution, as are all others raised in this case, upon the proper interpretation of the intent and purpose of Section 247 of the Constitution.

It has been written, "the pole star in the construction of constitutions is the intention of the makers and adopters," and that:

"Even where terms of a constitutional provision are not entirely free from doubt, they must be interpreted as nearly as possible in consonance with the objects and purposes in contemplation at the time of their adoption."

And again:

"Constitutions are to be construed in the light of their purpose and should be given a practical interpretation so that the plainly manifest purpose of those who created them may be carried out. In

other words, a constitutional provision should not be construed so as to defeat its evident purpose, but rather, so as to give it effective operation and suppress the mischief at which it is aimed." American Jurisprudence 11, pp. 674, 675.

This Court, in the case of Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, 38 S. W. (2d) 987, 992, quoting from Judge Cooley in People v. Harding, 53 Mich. 481, 19 N. W. 155, wrote:

"'* * * constitutional provisions must be interpreted with reference to 'the times and circumstances under which the state constitution was formed—the general spirit of the times and the prevailing sentiments among the people. Every constitution has a history of its own which is likely to be more or less peculiar; and unless interpreted in the light of this history is liable to be made to express purposes which were never within the minds of the people in agreeing to it.' "

Is it conceivable that the purpose of Section 247 of our Constitution was to insure a contractor all possible profit that could be derived from the State's printing requirements, or was its purpose, as indicated by the Constitutional Debates, to insure that the State obtain its printing at the least possible cost, and thus conserve the taxpayers' money? Granted that the language employed is susceptible to the construction placed upon it by appellant, are we to ignore the principle that a constitutional provision is to be interpreted so as to carry out the general purposes of the government and not defeat them?

Authorities on the precise question here involved are few, though many could be cited in support of the general principles of construction upon which we have commented. Peculiarly expressive of our views of the question under discussion is the following language of the Chief Justice of the Michigan Supreme Court, who, with three of his colleagues, dissented from the decision of an equally divided court in the case of Franklin De-Kleine Co. v. Board of State Auditors et al., 289 Mich. 658, 287 N. W. 325, 327:

"I do not agree with the opinion granting mandamus in so far as it prevents respondents from doing printing by mimeograph, multilith, multigraph duplicator or other instrument that can be op-

erated in an office not devoted to printing or binding. Both the constitutional provision and the statutes cited in the foregoing opinion were, I believe, for the purpose of giving State printing and binding to the lowest bidder or bidders who could present adequate and satisfactory security for the performance of the work. Article 4, Section 25, of the Constitution of 1908 [identical to all intents and purposes with Section 247 Kentucky Constitution] must be interpreted in the light of the circumstances from which it sprung. Its whole tenor indicates that it sought to eliminate the possibility of favoritism or patronage in securing contracts for services and supplies to the State and to secure such goods and services at the lowest possible cost to the public. The article was not designed to put the State in a straitjacket so that it could not print or make manifold copies of its records and documents by machines in its own offices. 'State interest is the chief consideration in all these transactions' * * * and when that interest, administrative convenience, economy or other factors dictate the purchase and installation of various reproducing machines for State offices, we should be slow to construe as an inhibition on such action language which relates to the letting of contracts, a quite different procedure from that which has been followed.''

The only discernable objectives of Section 247, viewed through the eyes of those responsible for its enactment, was the prevention of extravagance and favoritism—to insure that the Commonwealth would not be required or permitted to expend more for its printing and binding than it was necessary for it to expend—to enable it to obtain these requirements at the lowest possible cost. Neither the constitutional provision nor the statutes enacted to carry it into effect confers upon the appellant the right to do all of the State's printing and binding, but only so much as the State is not able to accomplish by the methods authorized by Kentucky Statutes, Section 4618-89.

In so far as the Chancellor's declaration of the rights of the parties conforms to the views herein expressed, that declaration is approved; and the judgment dismissing the petition is affirmed.

The whole Court sitting.