COMMONWEALTH of Kentucky, ex rel. Steven L. BESHEAR, Attorney General, Appellant,

v.

KENTUCKY UTILITIES COMPANY, Appellee,

and

PUBLIC SERVICE COMMISSION, Appellant,

v.

KENTUCKY UTILITIES COMPANY, Appellee.

Court of Appeals of Kentucky.

Oct. 22, 1982.

Discretionary Review Denied May 4, 1983.

William M. Sawyer, Frankfort, for appellant, Public Service Com'n.

James D. Brannen, Sylvia L. Lovely, Asst. Attys. Gen., Frankfort, for appellant, Attorney General.

Richard F. Newell, Ernest W. Williams, Ogden, Robertson & Marshall, Louisville, for appellee.

Before LESTER, WHITE and WINTER-SHEIMER, JJ.

WINTERSHEIMER, Judge.

This appeal is from an order of the circuit court which held that customer refunds made by Kentucky Utilities were fixed at 6 percent interest for the entire refund period from May 15, 1974 to August 18, 1981.

After seven years of litigation, the 1974 Public Service Commission rate order was affirmed and the utility was required to

refund to its customers the money it had overcollected. The Commission ordered the utility to pay interest on the refund at the rate of 10 percent. The company complained to the circuit court that 6 percent was the appropriate rate because an injunction had been issued in 1975, relating to refund practices.

The issue is whether the circuit court committed reversible error in determining that the 1975 injunction was to be applied to the ultimate refund.

On November 21, 1973, the company notified the Commission that it would increase annual electric rates by 13.4 million dollars in 20 days. The company provides service in all or parts of 78 counties in central, southeastern and western Kentucky and includes metropolitan Lexington involving more than 330,000 customers. The Commission suspended the proposed rates for five months until May 14, 1974. The Commission did not issue an order within that time. The utility began collecting the entire 13.4 million dollar rate on May 15, 1974, subject to refund. On July 10, 1974, the Commission granted 7.3 million dollars of the requested increase and ordered a refund of the 6.7 million dollar difference with the refund to include 6 percent interest for the period of overcollection.

The company appealed to the circuit court objecting to the amount of the rate increase and obtained an injunction allowing it to retain all the overcharge amounts until the completion of the appeal process. An extensive series of appeals and remands followed. Seven years later, in 1981, the Court of Appeals upheld the order of July 10, 1974, as to the basic rate increase. The Commission then issued an order on July 10, 1981, indicating that the interest rate on refund would remain at 6 percent for the period from May 15, 1974 until July 10, 1974, the date of the first order, but that interest for all amounts collected after that date would be at 10 percent. The Commission cited the dramatic rise in interest rates in arriving at what it believed to be a fair rate of interest on the consumer's money. The utility argues that the original order of 6 percent interest on the refund should apply to all amounts collected until the end of the entire litigation. In December, 1981, the circuit court agreed with the company's position. This appeal followed.

This Court reverses the order of the circuit court and remands this case to the Public Service Commission for entry of its July 10, 1981 order as to the interest rate on the refunds.

The circuit court committed reversible error in concluding that the 1975 injunction established the rate of interest on the entire ultimate refund.

■ It is the holding of this Court that interest on refunds is a rate-making matter that has been specifically delegated to the Public Service Commission by the legislature. The courts cannot interfere in that aspect of the rate-making process. A 6 percent interest rate as originally ordered by the Commission might be considered reasonable in that period of relatively stable economic conditions. Such an interest rate is totally unrealistic in the economy of the 1980's. The attempt to permanently fix at 6 percent the interest rate for a seven-year litigation was an abuse of the injunctive power of the circuit court.

■ The determination as to whether interest is allowed on a refund is within the sound discretion of the Commission. KRS 278.190(4). The amount of that interest must also be within the sound discretion of the agency.

■ The circuit court has a right to enjoin the enforcement of the Commission's 1974 order until the merits of the case could be ultimately considered by the courts. That litigation took seven years to complete. After denying the company's petition for rehearing on May 29, 1981, this Court's final mandate issued on June 19, 1981. Only at that time were the provisions of KRS 278.190(4) regarding a proper interest rate on refund activated. This Court's mandate was the final determination of the proceedings by an order of court. The Commission properly used its discretion to determine that the company should pay in-

terest on the money it improperly and unlawfully withheld from its customers from July 10, 1974 to June 19, 1981, at a rate of 10 percent per annum. The purpose of injunctive relief is to preserve the status quo. Here the status quo was significantly altered by outside economic factors relating to interest rates. At the time of the injunction, the utility was to refund the overcollection between May 15, 1974 and July 10, 1974 at 6 percent interest. It would have been impossible to predict that the litigation would continue for another seven years before the refund was ultimately ordered. Obviously, the utility has had the use of the consumers' money for that period of time. Appropriate interest on the refund was properly considered by the Commission. The circuit court abused its discretion in its 1981 order determining that a 6 percent interest on the refund should be extended from 1975 to 1981.

■ The circuit court's interpretation of the injunction is reversible error because it allows the circuit court to determine what the proper interest rate should be. That function resides in the Public Service Commission pursuant to KRS 278.190(4). The amount of interest a utility must pay on the rates it has improperly collected from its customers is as much a part of the rate-making process as the establishment of fair, just and reasonable rates. Rate-making is the sole function of the General Assembly acting through the Public Service Commission. *See, Stephens v. South Central Bell Telephone Co.,* Ky., 545 S.W.2d 927 (1976); *Kentucky Power Co. v. Energy Regulatory Comm'n,* Ky., 623 S.W.2d 904 (1981). Indirect rate making by the judicial branch of government through the use of its injunctive powers, is also improper. The recently decided case of *South Central Bell Telephone Co. v. Utility Regulatory Comm'n,* Ky., 637 S.W.2d 649, (1982), is not applicable here in either a legal or factual context.

The Commission properly determined that 10 percent was the appropriate rate of interest for the company to pay its customers for the money it withheld from them from 1974 to 1981. The payment of interest is always discretionary with the Commission on a refund. If the Commission determines that interest is required, then the amount of that interest is within the sound discretion of the agency. Great deference is always given to an administrative agency in the interpretation of a statute which is within its specific province.

■ Here the 10 percent rate for the refund was simply a means of compensating the utility customers for the loss of the use of their money over the seven-year period in which the circuit court injunction was in effect. The utility was not lawfully entitled to have possession of the extra 6.7 million dollars. The rate payers were entitled to be reimbursed for the loss of the use of this principal amount for the seven-year period. The Commission order noted that the prime rate of interest had risen from over 6 percent in 1974, to over 20 percent in 1980. The utility's long-term bonds were earning an average of 10 percent over the same time span. Certainly the Commission's determination of 10 percent interest was a fair and reasonable rate and was within its sound discretion.

It should be noted that public utilities have candidly admitted that they are able to profit by holding customer money subject to refund at an interest rate not commensurate with current market conditions. *See, Mobil Oil Corp. v. Federal Power Comm'n,* 469 F.2d 130 (D.C.Cir., 1972). In the case of *Consumers' Power Co. v. Michigan Public Service Comm'n,* 15 P.U.R. 4th 508 (1976), it was determined that the appropriate rate of interest is that which could have been obtained on the money the rate payer was unlawfully deprived of by the overcharge.

The order of the circuit court is reversed. This matter is remanded to the Public Service Commission for the enforcement of its original order.

All concur.