RENDERED: FEBRUARY 19, 2009
TO BE PUBLISHED

# $\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$

2007-SC-000315-DG
2007-SC-000581-DG

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT

APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.     CASE NOS. 2006-CA-000068-MR AND 2006-CA-000113-MR
FRANKLIN CIRCUIT COURT NO. 05-CI-00386

TDC GROUP, LLC,
D/B/A MOLLY MALONE'S          APPELLEE/CROSS-APPELLANT

AND

ALCOHOLIC BEVERAGE CONTROL BOARD,
COMMONWEALTH OF KENTUCKY          APPELLEE

**OPINION OF THE COURT BY JUSTICE NOBLE**

**<u>AFFIRMING</u>**

This appeal arises from a challenge by Louisville/Jefferson County Metro Government ("Metro") to a decision of the Alcoholic Beverage Control Board to grant a retail drink license to TDC Group, LLC, d/b/a Molly Malone's ("Molly Malone's"). The issues raised concern KRS 241.075, which prohibits the issuance of a retail drink license to an applicant located in a "combination business and residential area" if another "similar establishment" is located within 700 feet of the applicant. Metro challenges the ABC Board's interpretation and application of the measurement method in KRS 241.075. Molly Malone's has cross-appealed to challenge the constitutionality of the

statute on the ground that it constitutes "special legislation" in violation of Sections 59 and 60 of the Kentucky Constitution. The Court of Appeals ruled against the ABC Board on the measurement issue, but ruled in favor of Molly Malone's as to the constitutionality of the statute. The Court of Appeals is hereby affirmed for reasons other than those stated in its opinion.

## I. Background

Molly Malone's operates at 933 Baxter Avenue in Louisville, Kentucky, where it serves food and drink to the public. It holds a retail beer license, a restaurant drink license, a limited Sunday license, and three supplemental bar licenses. In September 2004, Molly Malone's applied for a retail liquor drink license to replace its restaurant drink license. The local ABC administrator denied the application, citing inadequate off-street parking and public sentiment against issuance of the license. The administrator also relied on the 700-feet restriction in KRS 241.075. By the administrator's measurement two other retail drink licensees on the other side of Baxter Avenue—Burns & Bielefeld, Inc., d/b/a Wet Willy's, and Outlook Inn, Inc., d/b/a Outlook Inn— were within 700 feet of Molly Malone's. The administrator measured the distance to Wet Willy's as 398 feet by walking in the direction of Wet Willy's from the entrance of Molly Malone's, crossing the street at the nearest intersection (where Morton Avenue ends at Baxter Avenue and which includes no marked crosswalk), and then continuing to the entrance of Wet Willy's. The administrator measured the distance to Outlook Inn as 336 feet by the same method, except the intersection used in that route was where Christy Avenue ends at Baxter Avenue, which also included no marked crosswalk.

2

Molly Malone's appealed the decision to the ABC Board. The Board held a full adjudicatory hearing at which it heard testimony from William Schreck, the local ABC administrator;[1] Wayne Westerman, a land surveyor and expert for Molly Malone's; Donal Ryan, one of the owners of Molly Malone's; and Charles Weathers, the local ABC investigator who made the under-700-feet measurements. The Board concluded that the lack of parking was not a sufficient reason for denying the license, citing the fact that Molly Malone's had previously been granted a waiver reducing its number of required off-street parking spaces. The Board also found that public sentiment was not enough to deny the license because petitions by members of the public had been presented in favor of and in opposition to the application for the license.

The Board also found that the local administrator had incorrectly measured the distance between Molly Malone's and the other establishments. Specifically, the Board found that KRS 241.075(3)'s requirement that the measurement be taken according to the "shortest route of ordinary pedestrian travel" means a route that is both lawful and safe. The Board rejected the local administrator's measurement, which required crossing in the middle of the block and without a marked crosswalk, which the Board read as violating KRS 189.570(6)(c), and going across a road known for its heavy traffic, which the Board concluded was unsafe. Instead, the Board adopted Molly Malone's proposed measurements, which assumed that a pedestrian would walk to the nearest intersection with a marked crosswalk (located where Highland Avenue

---

[1] Schreck's actual title is Director of the Department of Inspections, Permits and Licenses. The Department is Metro's local ABC agency.

3

crosses Baxter Avenue) and which were over 700 feet for both Wet Willy's and Outlook Inn. The Board concluded that the route through the intersection at Highland Avenue was the shortest safe and legal route of ordinary pedestrian travel.

Based on these findings, the Board ordered that Molly Malone's application be granted. Metro appealed the decision to the Franklin Circuit Court, arguing that the Board incorrectly interpreted KRS 241.075(3). Molly Malone's in turn argued that the statute was unconstitutional because its 700-feet requirement only applied to businesses in certain parts of first-class cities and consolidated local governments and was therefore discriminatory and violated the proscription on special legislation founding Section 59 and 60 of the Kentucky Constitution.

The circuit court affirmed the Board's decision. It held that the Board had interpreted the measurement requirements of the statute correctly and did not reach the issue of the statute's constitutionality.

Metro again appealed, challenging the Board's reading of the statute. Molly Malone's filed a cross-appeal, again seeking to have the statute declared unconstitutional. The Court of Appeals held that the Board had properly read the statute to require both lawful and safe travel, but held that the path followed by the local administrator was neither unlawful nor unsafe. The court went on to address the constitutionality of the statute, holding that it violated the proscription on special legislation found in Sections 59 and 60 of the Kentucky Constitution.

4

This Court granted Metro's motion for discretionary review and Molly Malone's subsequent cross-motion for discretionary review.

## II. Analysis

### A. Priority of Issues

Both parties' issues are properly before the Court. However, because both a question of statutory construction and application, and a question of constitutionality are presented, the order in which the issues should be taken up by the Court must first be addressed.

Molly Malone's argues that the constitutionality of the statute must be addressed first because to do otherwise requires application of a potentially unconstitutional statute. In support of this position, Molly Malone's cites <u>D.F. v. Codell</u>, 127 S.W.3d 571, 578 (Ky. 2003), which held a statute to be unconstitutional and then declined to address other issues raised in the case because they were moot. Molly Malone's ignores that the other issues in <u>Codell</u> involved other constitutional challenges to the statutory scheme in question.

More importantly, it ignores "the long-standing practice of this Court . . . to refrain from reaching constitutional issues when other, non-constitutional grounds can be relied upon." <u>Baker v. Fletcher</u>, 204 S.W.3d 589, 597-98 (Ky. 2006); <u>see</u> <u>Dawson v. Birenbaum</u>, 968 S.W.2d 663, 666 (Ky. 1998) ("It is well settled that where a party pleads both statutory and constitutional claims, the court deciding those claims should limit itself to considering the statutory claims if in so doing the court may avoid deciding complex constitutional issues."); <u>Preston v. Clements</u>, 313 Ky. 479, 232 S.W.2d 85, 88 (1950) ("The prevailing rule seems to be that the courts will avoid the question of

5

constitutionality unless necessary to a proper determination of the merits of the cause under consideration."); see also Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C., 467 U.S. 138, 157-58 (1984) ("It is a fundamental rule of judicial restraint, however, that this Court will not reach constitutional questions in advance of the necessity of deciding them."); Spector Motor Service v. McLaughlin, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."). This practice of avoiding constitutional questions is further buttressed in this Court's jurisprudence law by the presumption of constitutionality of statutes. Baker, 204 S.W.3d at 598.

Therefore, despite Molly Malone's request, this Court cannot address the constitutionality of the statute without first determining whether the Court of Appeals was correct that it barred issuance of the license.

## B. Measuring Distance Under KRS 241.075

The Court of Appeals was correct in upholding the ABC Board's reading of KRS 241.075(3) as requiring that the measurement be taken along a route that is both lawful and safe. This Court has recognized the "deference afforded an administrative agency's construction of a statute that it is charged with implementing," so long as the "agency interpretation is in the form of an adopted regulation or formal adjudication." Board of Trustees of Judicial Form Retirement System v. Attorney General of the Commonwealth, 132 S.W.3d 770, 786-87 (Ky. 2003) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844-45 (1984)); see also Commonwealth, ex rel. Stumbo v.

6

Kentucky Public Service Com'n, 243 S.W.3d 374, 380 (Ky. App. 2007) ("[W]e afford deference to an administrative agency's interpretation of the statutes and regulations it is charged with implementing."); Commonwealth ex rel. Beshear v. Kentucky Utilities Co., 648 S.W.2d 535, 537 (Ky. App. 1982) ("Great deference is always given to an administrative agency in the interpretation of a statute which is within its specific province."). The ABC Board's interpretation of KRS 241.075(3) came in the context of the formal adjudicatory process, namely an appeal to the Board. Moreover, the Board's interpretation is not arbitrary or capricious, as it was determined by applying a reasonableness analysis.

The Court of Appeals was also correct that it was legal to cross Baxter Avenue where the local administrator did when he measured the distance to the nearest similar establishments. This determination depends in large part on the "unique geography," as the Court of Appeals described it, where Molly Malone's is located. Specifically, it involves that portion of Baxter Avenue, which extends north and south, between its intersections with Highland Avenue (to the south) and Cherokee Road/Broadway (to the north).[2] There are no cross-streets on the east side of Baxter Avenue between Highland Avenue and Cherokee Road/Broadway. However, on the west side, as one moves north

---

[2] This description of the geographical layout of Baxter Avenue is not completely accurate. Baxter Avenue actually extends north-northwest and south-southeast, which means it has an east-northeast side instead of an east side, and a west-southwest side instead of a west side. Because the use of such sub-ordinal directions can be confusing for readers (and the author of this Opinion) and the exact directions as they appear on a map are not crucial to this decision, the directions used in the main text all assume a clockwise rotation of approximately 22.5 degrees. Thus, north-northwest is described as "north," and south-southeast is described as "south."

7

from Highland Avenue, three streets—Morton Avenue, Christy Avenue, and Breckenridge Street, respectively—intersect with and terminate at Baxter Avenue. There are no marked crosswalks or traffic control signals at the termination of any of these three roadways. Directly across from Christy Avenue is an alley that runs perpendicular to Baxter Avenue.

Molly Malone's sits on the east side of Baxter Avenue, between the intersections with Morton Avenue and Christy Avenue. Wet Willy's and Outlook Inn are located on the west side of Baxter. Wet Willy's is south of the intersection with Morton Avenue; Outlook Inn is located north of the intersection with Christy Avenue. The nearest intersection with a four-way stop and marked crosswalks is where Highland Avenue crosses Baxter Avenue.

The ABC Board held that it would be illegal for a pedestrian to cross Baxter Avenue at the intersections with Christy Avenue and Morton Avenue because of KRS 189.570(6)(c), which reads: "Between adjacent intersections within the city limits of every city at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk." The Board read the statute as requiring all crossings within a city to take place at intersections with traffic control signals and marked crosswalks.

This interpretation, however, ignores that the "at which traffic control signals are in operation" language modifies "adjacent intersections," all of which creates the condition precedent for the command to cross only in a marked crosswalk that follows. Thus, the crosswalks-only requirement applies only between adjacent intersections with traffic control signals. The Court of

8

Appeals therefore correctly noted that this statute was inapplicable to the current situation, because there are no traffic control signals at "adjacent intersections" (which means intersections that are next to each other on a roadway). The areas where Morton Avenue, Christy Avenue, and Breckenridge Street terminate at Baxter Avenue are "intersections" as contemplated by Kentucky's traffic regulations. See KRS 189.010(4)(a) ("'Intersection' means . . . [t]he area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two (2) highways which join one another, but do not necessarily continue, at approximately right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come into conflict . . . ."). The intersections at Highland Avenue and Morton Avenue are adjacent; the intersections at Highland Avenue and Christy Avenue are not adjacent, since the intersection at Morton Avenue lies between them. Because there are no traffic control signals in the intersections at Morton Avenue, Christy Avenue, or Breckenridge Street, KRS 189.010(4)(a) does not bar crossing Baxter Avenue outside of a marked crosswalk in the area in question.

In fact, it appears that there is no absolute legal bar to crossing Baxter Avenue at any place in the area in question, even outside unmarked crosswalks.[3] Instead, KRS 189.570, which regulates pedestrians, appears only

---

[3] A crosswalk is:

(a) That part of a roadway at an intersection within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or in the absence of curbs, from the edges of the traversable roadway; or

9

to delegate duties to yield rights-of-way and to prohibit certain specific dangerous actions by pedestrians. For example, KRS 189.570(4) assumes pedestrians will cross roadways "[w]hen traffic control signals are not in place or in operation" and requires that drivers yield the right of way to pedestrians already crossing the roadway. KRS 189.570(6)(a) assumes that pedestrians may cross at places other than a crosswalk, requiring only that "[e]very pedestrian crossing a roadway at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." KRS 189.570(9) places a further limit, but no prohibition, on crossing outside a crosswalk: "No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an immediate hazard." Absent the limited circumstances of adjacent intersections with traffic control signals, it appears that crossing a roadway outside of a marked or unmarked crosswalk is not per se illegal.[4]

---

(b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.

KRS 189.010(2). Subsection (a), when contrasted with subsection (b), appears to define an "unmarked" crosswalk. Arguably, at least one such unmarked crosswalk is present across Baxter Avenue at the Christy Avenue intersection, since it appears that some sidewalk runs down the alley perpendicular to Baxter Avenue, which would create an area of roadway between the connection of the lateral lines of that sidewalk and the one that runs on the side of Christy Avenue. As the Court of Appeals noted, "Indeed, the record shows that there is an alley opposite the terminus of Christy Avenue, along which the lines of the sidewalk clearly continue."

[4] This is not to say the practice commonly known as jaywalking is per se legal either. For example, one definition of "jaywalking" is "[t]he act or instance of crossing a street without heeding traffic regulations, as by crossing between intersections or at a place other than a crosswalk." Black's Law Dictionary 852 (8th ed. 2004). The term covers a broader category of behavior than merely crossing outside a crosswalk.

10

Thus, the ABC Board was incorrect in reading KRS 189.570(6)(a) as making it illegal to cross Baxter Avenue at Morton Avenue and Christy Avenue. Furthermore, because the ABC Board is not charged with administering the traffic regulations, its interpretation of the statute is accorded no deference by the courts of this Commonwealth.

This conclusion, however, does not end the enquiry. The ABC Board read KRS 241.075(3) to require that the path of measurement be both lawful and safe. While the question of the legality of the path is a pure question of law, which this Court has reviewed <u>de novo</u>, whether the path urged by Metro (and used by the local administrator) is safe is a finding of fact and is entitled to a greater deal of deference. KRS 13B.150(2) requires that when reviewing an administrative agency's decision, "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." In fact, the court may only reverse an agency's

> final order, in whole or in part, . . . if it finds the agency's final order is:
>> (a) In violation of constitutional or statutory provisions;
>> (b) In excess of the statutory authority of the agency;
>> (c) Without support of substantial evidence on the whole record;
>> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

11

(g) Deficient as otherwise provided by law.

KRS 13B.150(2).

The judicial standard of review of an agency's decision therefore is largely deferential: "The . . . court's role as an appellate court is to review the administrative decision, not to reinterpret or to reconsider the merits of the claim, nor to substitute its judgment for that of the agency as to the weight of the evidence." 500 Associates, Inc. v. Natural Resources and Environmental Protection Cabinet, 204 S.W.3d 121, 131 (Ky. App. 2006) (citation footnote omitted). When it comes to an agency's findings of fact, "[a]s long as there is substantial evidence in the record to support the agency's decision, the court must defer to the agency, even if there is conflicting evidence." Id. at 132.

The Court of Appeals did not give such deference to the ABC Board's finding that crossing outside of the marked crosswalk at the intersection of Baxter Avenue and Highland Avenue was unsafe. The Court of Appeals' holding is based on the facts that such crossings are not illegal and that pedestrians who cross outside a crosswalk are required to yield the right-of-way. That a crossing is legal and a pedestrian has a duty with regard to the right-of-way, however, does not make the crossing inherently safe. Nowhere does this analysis take into account the evidence presented to and reviewed by the ABC Board. In fact, the Court of Appeals simply failed to engage in proper judicial review of the ABC Board's finding, choosing instead to treat it like review of a question of law.

But the ABC Board's finding that Metro's proposed crossing is unsafe is a finding of fact, and thus must be upheld as long as there is substantial

12

evidence to support it. At the Board's hearing, William Schreck, the local ABC administrator, testified that he lived near the area of Baxter Avenue in question and was personally familiar with it. He also agreed that Baxter Avenue is a "very heavily traveled thoroughfare." Charles Weather, the ABC investigator, also testified that Baxter Avenue was a heavily traveled thoroughfare. Evidence also indicated that the closest marked crosswalk with traffic control signals was at the intersection of Highland Avenue and Baxter Avenue. The Board concluded in part that this heavy traffic made it unsafe to cross Baxter Avenue outside the marked crosswalk at Highland Avenue. The testimony of the local ABC administrator and investigator alone is sufficient to support the ABC Board's finding. Thus, this Court must conclude that it was supported by substantial evidence. Since the Board's decision was premised on requiring that the measurement be taken along a route that is both lawful <u>and</u> safe, this finding that Metro's proposed route was unsafe was alone enough to justify its decision not to accept Metro's measurement and instead to adopt the route proposed by Molly Malone's.

Moreover, since the ABC Board is charged with implementing KRS 241.075 and its interpretations of the statute, unless clearly contradicted by the language of the statute itself, are accorded deference by the courts, it is unclear that even a lack of substantial evidence of the unsafe nature of crossing Baxter Avenue would require reversal of its decision. The Board concluded, "The only safe and reasonable means of crossing Baxter Ave[nue] is by the use of marked crosswalks at the Highland Ave[nue] intersection where traffic signals are in place. . . . [T[he Board's distance measurement based

13

upon the use of marked crosswalks is proper, irrespective of legal pedestrian laws." Though this passage is not explicit, it clearly implies that the Board reads the "ordinary pedestrian" language of KRS 241.075(3) to mean a reasonable pedestrian. In determining what a reasonable pedestrian would do in this situation, the Board required the measurement to include a marked crosswalk, even if a pedestrian would not be legally obligated to use the crosswalk. That the Board incorrectly interpreted KRS 189.570(6) to conclude that the proposed pedestrian crossings were illegal does not undermine this final conclusion, since it reached its decision "irrespective of the legal pedestrian laws."

Though such an interpretation likely means the Board will grant more licenses, this Court cannot say that the Board's conclusion in this regard was arbitrary or capricious, or outside its legal authority under KRS 241.075. Such policy decisions are a fundamental part of an administrative agency's regulatory powers as delegated to them by the legislature. Thus, this Court concludes that the Board did not abuse its discretion, and its decision must be upheld.

14

### III. Conclusion

The Court of Appeals therefore should have affirmed the decisions of the circuit court and the ABC Board based solely on the Board's interpretation of the licensing statute and its findings of fact. Instead the Court of Appeals affirmed the decision to grant Molly Malone's application by declaring that KRS 241.075 was special or local legislation in violation of Section 59 and 60 of the Kentucky Constitution, meaning that the Board therefore had not erred insofar that it found the distance between Molly Malone's and the other similar establishments was not a bar to granting the application. Because this Court finds sufficient reason to affirm the Board's decision within the standard process of judicial review of an administrative agency's decision, the constitutional issue cannot be addressed. Baker, 204 S.W.3d at 598 ("Therefore, we must not reach a constitutional issue if other grounds are sufficient to decide the case."). Therefore, for the foregoing narrow reasons, which are different than those articulated below, the decision of the Court of Appeals is affirmed.

Minton, C.J.; Cunningham, Schroder, Scott and Venters, JJ., concur. Abramson, J., not sitting.

COUNSEL FOR APPELLANT/CROSS APPELLEE,
LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT:

David A. Sexton
Assistant Jefferson County Attorney
Fiscal Court Building
531 Court Place, Suite 900
Louisville, Kentucky  40202


COUNSEL FOR APPELLEE/CROSS APPELLANT,
TDC GROUP, LLC, D/B/A MOLLY MALONE'S:

Kenneth Sidney Handmaker
Kevin Lee Chlarson
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, Kentucky  40202


COUNSEL FOR APPELLEE, ALCOHOLIC BEVERAGE CONTROL BOARD,
COMMONWEALTH OF KENTUCKY:

Henry Joseph Curtis
La Tasha Arnae Buckner
Matthew Scott Finley
Office of Alcoholic Beverage Control
1003 Twilight Trail
Frankfort, Kentucky  40601