RENDERED:  DECEMBER 19, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1149-MR

BRAYDEN GRIMSLEY                                                          APPELLANT

v.      APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 22-CI-00475

PHILLIP BURNETT, JR., IN HIS
INDIVIDUAL CAPACITY AND
OFFICIAL CAPACITY AS
COMMISSIONER OF THE
KENTUCKY STATE POLICE; AND
HOLLY MCCOY JOHNSON, IN HER
INDIVIDUAL CAPACITY AND
OFFICIAL CAPACITY AS
SECRETARY OF THE FINANCE
AND ADMINISTRATION CABINET                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND McNEILL, JUDGES.

ACREE, JUDGE: Appellant, Brayden Grimsley, seeks reversal of the Franklin Circuit Court's September 5, 2022 Order granting the CR[1] 12.02 dismissal of his complaint against Phillip Burnett, Jr., in his individual capacity and his official capacity as Commissioner of the Kentucky State Police (KSP Commissioner) and Holly McCoy Johnson, in her individual capacity and her official capacity as Secretary of the Finance and Administration Cabinet (Cabinet). We affirm.

## RELEVANT BACKGROUND

On August 3, 2019, then-KSP Trooper Rickey Elmore arrested Appellant during a traffic stop. There was a near immediate "Post level preliminary inquiry" into Elmore's actions. (Record (R.) 171). On August 9, 2019, the KSP Commander of Internal Affairs initiated a formal investigation. (*Id.*). Video and audio footage revealed Elmore used excessive force against Appellant, including tasing him without just cause. Elmore resigned before the formal investigation completed. All criminal charges against Appellant eventually were dismissed as lacking probable cause to arrest.

Appellant initiated a federal action solely against Elmore pursuant to 42 U.S.C.[2] § 1983. He alleged Elmore's conduct "was perpetrated with malice and/or deliberate indifference . . . [,] wantonly, with gross negligence, recklessness

---

[1] Kentucky Rules of Civil Procedure.

[2] United States Code.

and/or intent . . . [, and that] no probable cause existed to believe [Appellant] committed any of the crimes he was charged with . . . ." (R. 47) (Complaint at 6, *Grimsley v. Elmore*, No. 2:20-cv-00047-DLB-CJS, 2020 WL 12815036 (E.D. Ky. Mar. 30, 2020)).

When Elmore was served with summons, he asked the Commonwealth to provide his legal defense pursuant to KRS[3] 12.211 *et seq*., and KRS 12.213 in particular. The Attorney General declined and so did the Governor. So, in December 2020, Elmore and another officer similarly accused of improper police conduct jointly sued the Governor alleging he breached a

> statutory duty per Kentucky Revised Statutes (KRS) 12.213 to provide . . . Elmore with defense counsel in the federal civil actions but failed to do so. . . . Elmore also pointed out that the Kentucky Attorney General refused to provide [hi]m with defense counsel; however, [he] did not name the Attorney General as a party to the action.

*Tucker v. Beshear*, No. 2022-CA-0238-MR, 2023 WL 3666451, at *1 (Ky. App. May 26, 2023) (describing the circuit court complaint).[4]

In October 2021, before the circuit court ruled on Elmore's case against the Governor, Appellant and Elmore settled the federal Section 1983

---

[3] Kentucky Revised Statutes.

[4] Aaron Tucker and Elmore jointly sued the Governor in Franklin Circuit Court presenting identical causes of action. Both were alleged to have engaged in improper use of force in effectuating an arrest, but in separate incidents. Both Tucker and Elmore had less than one year of service with the Kentucky State Police at the time of the incidents. *Tucker*, 2023 WL 3666451, at *1, *1 n.2.

action. Elmore agreed to a $100,000 judgment, but only paid Appellant $10,000 upon execution of the agreement. A separate provision is more relevant to this appeal.

> That separate provision states:
>
> Defendant [Elmore] agrees to assign his cause(s) of action, rights, entitlement, benefits, privileges, title, and interest, *if any*, to indemnification pursuant to KRS 16.185, or any other applicable law to Plaintiff [Appellant] . . . The *Assignment of Rights for Indemnification Under KRS 16.185* is attached and marked as Exhibit B.

(R. 52) (double emphasis added). Exhibit B says much the same. (R. 61). In Appellant's words, he presumed KRS 16.185(1) "creates a substantive, statutory property right to [the Commonwealth's] indemnification" of Elmore, (Appellant's Br. 12), and that "Elmore established his right to indemnification." (*Id.* at 13). On that basis, Appellant accepted Elmore's quitclaim of his chose in action against the Commonwealth that Appellant believes the statute provides.

However, a state trooper's indemnification pursuant to KRS 16.185 is contingent upon a declaration by the KSP Commissioner that the trooper's "act or omission which resulted in liability was within the scope and course of . . . employment and occurred during the performance of duty and was committed or omitted in the good faith belief that the act or omission was lawful and proper." KRS 16.185(2). Making roughly the same argument Elmore made in *Tucker*, *supra*, regarding KRS 12.213, Appellant argued KRS 16.185(1) established a right

and, citing KRS 16.185(2) as establishing the KSP Commissioner's duty to remove the contingency, demanded he make the necessary declaration. The Commissioner declined.

At the time Appellant made his demand, no court had interpreted either KRS 12.213 or KRS 16.185 as creating any property right. However, a month later, the Franklin Circuit Court did interpret KRS 12.213 in *Tucker*, concluding "nothing in the statute creates, or even implies an absolute right for a former employee to have the state provide a lawyer for the defense of such claims." *Tucker*, 2023 WL 3666451, at *1. Alternatively, the circuit court concluded KRS 12.212 expressly authorizes the Attorney General to "'decline to provide for the defense of a civil action' when he determines that the conduct for which the employee was sued 'was not within the scope and course of his employment as a state employee,' or it involved 'actual malice[.]'" *Id.* The Franklin Circuit Court dismissed Elmore's complaint, and he appealed.

About four (4) months later, in June 2022 before *Tucker v. Beshear* fully wended through the appeals process, Appellant initiated the instant action, again in Franklin Circuit Court, relying on his own interpretation that indemnification as described in KRS 16.185 represents another property right Elmore, and now Appellant as his assignee, could claim. He sought to compel the

KSP Commissioner and the Cabinet to take necessary actions to indemnify Appellant for all costs Elmore agreed to pay in the confessed judgment.

Appellant's case was assigned to the same judge, Judge Phillip J. Shepherd, who adjudicated *Tucker*. On September 5, 2023, the same day this Court rendered *Tucker*, Judge Shepherd dismissed Appellant's complaint. Understandably, the judge based his dismissal of the complaint on the same reasoning he applied in *Tucker* that this Court that very day affirmed, stating:

> [S]ince it has been determined that Elmore had no right to a defense under KRS 12.213, then there can be no right of indemnification. The right of indemnification is not triggered until the state has accepted that the defendant acted in good faith within the scope of his duties. Having found that former Trooper Elmore is not entitled to a defense, he cannot be entitled to indemnification.
>
> . . . .
>
> Mr. Grimsley would only have a valid claim for indemnification had Mr. Elmore been provided a defense by the Attorney General in the underlying police brutality case.

(R. 180–81).

The circuit court dismissed Appellant's action for failing to state a claim upon which relief could be granted. Appellant appeals that decision.

## STANDARD OF REVIEW

Appellate courts review CR 12.02(f) motions to dismiss *de novo*. *Hardin v. Jefferson Cnty. Bd. of Educ.*, 558 S.W.3d 1, 5 (Ky. App. 2018). The

-6-

purpose of CR 12.02(f) is to test the sufficiency of the complaint, *id.* (citing *Pike v. George*, 434 S.W.2d 626, 627 (Ky. 1968)), granting the motion only if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *James v. Wilson*, 95 S.W.3d 875, 883 (Ky. App. 2002).

Appellate review of CR 12.02(f) dismissals requires us to accept as true the plaintiff's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Pike*, 434 S.W.2d at 627.

Because "interpretation of statutes is a matter of law which we review *de novo* . . . [w]e afford no deference to the statutory interpretations of the lower courts." *Blackaby v. Barnes*, 614 S.W.3d 897, 901 (Ky. 2021) (internal quotation marks and citations omitted).

Finally, reviewing courts abide by "the long-standing practice of this Court . . . to refrain from reaching constitutional issues when other, non-constitutional grounds can be relied upon." *Louisville/Jefferson Cnty. Metro Gov't v. TDC Group, LLC*, 283 S.W.3d 657, 660 (Ky. 2009) (internal quotation marks and citation omitted). This does not prohibit our discussion of a party's constitutional argument.

## ANALYSIS

Appellant wants to both have his cake and to eat it, too. He could not prevail in his Section 1983 federal lawsuit if Elmore had "a reasonable and good faith belief . . . that his or her conduct [wa]s lawful, even where in fact it is not," because that belief "constitutes a complete defense to a § 1983 claim for damages." *Procunier v. Navarette*, 434 U.S. 555, 559, 98 S. Ct. 855, 858, 55 L. Ed. 2d 24 (1978) (citation omitted). Elmore had no such "good faith belief" or he would have asserted it in the federal lawsuit instead of settling, and Appellant effectively alleged as much by filing the complaint in the first place. He now takes the polar opposite position.

Appellant claims to believe and wants the KSP Commissioner to agree with his new position that "Elmore *was* acting . . . in the good faith belief that his acts were lawful and proper." (R. 8 (Complaint 8) and R. 108 (Amended Complaint 8) (emphasis added)).[5] Perhaps no argument ever was better suited to applying the principle that "common sense must not be a stranger in the house of the law." *Cantrell v. Kentucky Unemployment Ins. Comm'n*, 450 S.W.2d 235, 237

---

[5] The same attorney made these contradictory allegations in federal court and then in state court, respectively. The relevant rule requires both complaints, "to the best of his knowledge, information, and belief formed after reasonable inquiry [be] well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose[.]" CR 11. It is difficult to see how both contradictory sets of allegations pass muster under the rule.

(Ky. 1970). The universe in which Appellant's contradictory descriptions of Elmore's conduct are both true does not exist, notwithstanding F. Scott Fitzgerald's test of our intelligence.[6]

The Attorney General's and Governor's refusal to pay for Elmore's legal defense and the circuit court's upholding of those decisions in *Tucker* most likely contributed to Elmore's willingness to settle Appellant's federal claim against him. Now, however, Appellant argues the circuit court's reasoning there, which this Court affirmed, is flawed.

However, he starts off strong by arguing it is legal error to hold a state trooper cannot avail himself of the benefits of KRS 16.185(1) without first successfully availing himself of the benefits of KRS 12.213. To that extent only, this Court agrees. Neither statutory operation depends on the other but is entirely independent. Each requires different executive branch officers, lawfully delegated a non-legislative factfinding role, to determine "when an expenditure shall be made[,] merely put[ting] the provisions of the Act into operation." *Commonwealth ex rel. Meredith v. Johnson*, 166 S.W.2d 409, 412 (Ky. 1942).

---

[6] "[T]he test of a first-rate intelligence is the ability to hold two opposed ideas in the mind at the same time, and still retain the ability to function." F. Scott Fitzgerald, *The Crack Up: A Desolately Frank Document from One for Whom the Salt of Life Has Lost Its Savor*, ESQUIRE, February 1936, at 41.

But our agreement with this first argument is not relevant here, nor sufficient to authorize reversing the circuit court's order.

The circuit court was on the right path when it recognized both statutes had something important in common—"Elmore has *no absolute right* to either a legal defense [under KRS 12.213] or indemnification [under KRS 16.185]." (R. 184) (emphasis added). Appellant misunderstands the nature of these statutes. They do not create rights to which a certain class of individuals are entitled. Regarding KRS 16.185 at least, the statute provides for the discretionary allocation of legislative appropriations to the Cabinet, subject to predicate factfinding by the KSP Commissioner to whom the General Assembly delegated that non-legislative function.

KRS 16.185 "*allows* the Commonwealth to indemnify an officer for 'actual financial loss, unreimbursed from any source' for negligence in the 'line of duty,' . . . ." *Speck v. Bowling*, 892 S.W.2d 309, 312 (Ky. App. 1995) (emphasis added). "[B]y passing this statute the legislature has recognized that state troopers are exposed to personal liability" even when performing their duty with an erroneous but good-faith belief their conduct complies with the law and, therefore, it is a proper function of government and appropriate use of tax dollars, to "give [the]m relief in the form of indemnity for that part of the judgment" not covered by other forms of insurance or indemnity. *Id.*

-10-

However, Appellant's belief the statute creates a right is wrong.

### 1. *KRS 16.185 does not create a right enforceable against the Commonwealth.*

Appellant claims that, by assignment, he possesses Elmore's "substantive, statutory property right" created by the General Assembly when it enacted KRS 16.185. Not so. What the General Assembly created can be assigned to no one.

"Right is a correlative to duty; where there is no duty there can be no right." *Right*, BLACK'S LAW DICTIONARY (12th ed. 2024). *See, e.g.*, *Drury v. Franke*, 57 S.W.2d 969, 972 (Ky. 1933) (noting "the absolute right to have restitution made" relative to "the absolute correlative duty to make restitution"). The General Assembly is empowered to create such a duty owed by state government to Kentucky citizens, thereby creating its correlative right. It does so by enacting a statute. That kind of "statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *United States Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 17 n.14, 97 S. Ct. 1505, 1516, 52 L. Ed. 2d 92 (1977).

No statutory claim of right "enforceable against the State" is possible "absent an explicit statutory waiver" of sovereign immunity. *Jewish Hosp. Healthcare Services, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 270 S.W.3d

-11-

904, 907 (Ky. App. 2008). "We will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Withers v. Univ. of Ky.*, 939 S.W.2d 340, 346 (Ky. 1997) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S. Ct. 458, 464–65, 53 L. Ed. 742 (1909)). Whether a statute creates such a right and whether sovereign immunity is waived is determined by applying "the unmistakability doctrine . . . , a natural corollary of our plain language approach to statutory construction" that "fits naturally into our jurisprudence." *Ky. Emps. Ret. Sys. v. Seven Cntys. Servs., Inc.*, 580 S.W.3d 530, 542, 543 (Ky. 2019).

Under the unmistakability doctrine, for a statute to cloak a citizen with a right, and to impose the correlative duty which can be enforced against the government, "there must be a clear indication that the legislature intends to bind itself in a contractual manner." *Id.* at 542 (quoting *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 600 (6th Cir. 2016)). Its purpose "is to avoid unnecessarily infringing on a state legislature's ability to legislate regarding state sovereign rights unless it is clear beyond any doubt that the legislature meant to give up that right." *Id.* at 543 (quoting *Puckett*, 833 F.3d at 600 (citing *United States v. Winstar Corp.*, 518 U.S. 839, 873–76, 116 S. Ct. 2432, 135 L. Ed. 2d 964

-12-

(1996))). "If the General Assembly 'intends to bind itself in a contractual manner,' . . . , it must clearly say so." *Id.*

Appellant argues KRS 16.185 satisfies the elements of the unmistakability doctrine. He points to the statute's use of the mandatory verb "shall" in subsection (1) as support for his argument the legislature intended a non-discretionary commitment to indemnify state troopers. In light of jurisprudence just set forth, that claim is untenable.

Applying the unmistakability doctrine that fits nicely with express Kentucky jurisprudence regarding the waiver of sovereign immunity, it is clear the General Assembly did not intend to create such a right. Appellant's argument depends upon a myopic focus, not limited merely on KRS 16.185(1), but on just a portion of it.

But we do not interpret snippets of a statute; "each section is to be construed in accord with the statute as a whole." *Combs v. Hubb Coal Corp.*, 934 S.W.2d 250, 253 (Ky. 1996). We cannot interpret "shall" in subsection (1) as mandating indemnification because it is more than clear indemnification is conditioned on certain factfinding required by subsection (2). Our reading of the statute—and particularly the use of "shall" in subsection (1)—is that *if* the condition of subsection (2) is met and indemnification is allowed, the source of the payments to the Trooper "shall be . . . funds appropriated to the Finance and

Administration Cabinet for the payment of judgments . . . ." KRS 16.185(1). This subsection is not the General Assembly's clear statement of intent "to bind itself in a contractual manner . . . ." *Seven Cntys. Servs.*, 580 S.W.3d at 543.

Furthermore, there can be no clear intent to create a right enforceable against the Commonwealth without the unmistakable waiver of the sovereign right of immunity. *Id.*; *Withers*, 939 S.W.2d at 346. The statute itself makes it clear that its policy to indemnify state troopers under the conditions of the statute "shall not constitute a waiver of any privilege, immunity, or matter of defense, including the sovereign immunity of the Commonwealth." KRS 16.185(4). That is the literal opposite of what our jurisprudence requires to sustain Appellant's argument.

Because KRS 16.185 creates no right or chose in action[7] enforceable against the Commonwealth, Elmore had nothing he could assign to Appellant. For that reason, Appellant has no claim. Dismissing the complaint pursuant to a CR 12.02 motion for failing to state a legally cognizable claim was not error.

2. *KRS 16.185 is an appropriations statute.*

We start with this principle—"There are statutes that mandate appropriations even in the absence of a budget bill." *Fletcher v. Commonwealth*,

---

[7] "A chose in action is a right of action to recover 'a debt, a demand, a promissory note, [or] a right to recover damages.'" *Farmers Nat'l Bank v. Commonwealth Dep't of Revenue*, 486 S.W.3d 872, 880 (Ky. App. 2015) (quoting *Sheldon v. Sill*, 49 U.S. 441, 447, 8 How. 441, 12 L. Ed. 1147 (1850)). Kentucky law has long recognized a party's ability to purchase and transfer choses in action. *See Iowa Valve Co. v. Merkle Contracting Co.*, 80 S.W.2d 557, 558 (Ky. 1935).

163 S.W.3d 852, 865 (Ky. 2005). To understand why KRS 16.185 is that kind of appropriations statute, it is helpful to know how the General Assembly formerly reimbursed or indemnified public servants who suffered personal financial loss for performing their public service jobs—it was by the right to petition the government for redress of grievances contained in § 1(6) of the Kentucky Constitution.

For example, in 1936, the Breathitt County sheriff successfully petitioned the General Assembly to reimburse him for $119.28 in out-of-pocket expenses for extraditing an indictee from Kansas. 1936 KY. ACTS ch. 466. There was no other way for the sheriff to receive reimbursement from the state coffers. "[I]n the absence of a specific appropriation, or a statutory, constitutional, or federal mandate . . . , the unambiguous language of Section 230 prohibits the withdrawal of funds from the state treasury." *Fletcher*, 163 S.W.3d at 864–65. The appropriation to the sheriff was pursuant to the joint resolution of the General Assembly cited above.

Before the role and number of Executive Branch agencies expanded, such determinations as these busied the General Assembly on a case-by-case basis, sometimes tediously so. This was true for redress petitions beyond claims regularly brought by sheriffs extraditing prisoners. "[W]here a public officer has been subject to a responsibility and loss in an honest attempt to perform public duty . . . , [t]he Legislature may provide for his compensation or indemnity by the

-15-

state . . . ." *Board of Educ. of Calloway Cnty. v. Talbott*, 261 Ky. 66, 86 S.W.2d 1059, 1064 (1935). *See, e.g.*, *Miller v. O'Connell*, 304 Ky. 720, 721, 202 S.W.2d 406, 406 (1947) (affirming legality of "House Resolution No. 14 . . . [authorizing the] Secretary of State . . . , to pay out of funds therein appropriated to A. E. Funk, attorney, the sum of $2,500, with interest); *Carroll v. Bosworth*, 151 S.W. 916, 917 (Ky. 1912) (affirming legality of "An act permitting Charles Carroll to sue the state for a fee not exceeding $500.00 for legal services performed"); 1950 KY. ACTS ch. 246 (claims for 36 payments to court clerk of $5.00 each for issuing bench warrants; said fees being disallowed by subsequent change in the law).

Some claims for redress sought reimbursement of as little as one dollar ($1.00). 1936 KY. ACTS ch. 452. "[G]iven the realities . . . , [the General Assembly] has neither the time nor the expertise to do it all; it must have help." *Bd. of Tr. of Jud. Form Ret. Sys. v. Atty. Gen. of Commonwealth*, 132 S.W.3d 770, 781 (Ky. 2003) (citing *Mistretta v. United States*, 488 U.S. 361, 372, 109 S. Ct. 647, 655, 102 L. Ed. 2d 714 (1989)). Fortunately, there was a solution to the tedium.

The task of legislatively redressing petitioners' grievances has two parts: (1) appropriating available funds which only the legislature can do, and (2) assuring the basis of the appropriation is for a public purpose. The solution was legislative appropriation to an Executive Branch cabinet or agency regulating the

relevant matter and the delegation of the non-legislative factfinding responsibility to an Executive Branch officer in that cabinet or agency who would determine if the request to access such appropriation was for a personal benefit or for a public purpose through the petitioner's public service.

3. *Legislature delegated to KSP Commissioner factfinding determination whether reimbursement pursuant to KRS 16.185(1) was for a public purpose or service.*

Our jurisprudence tells us that "determination of what is and what is not a public purpose belongs in the first instance to the legislative department." *Carman v. Hickman Cnty.*, 185 Ky. 630, 215 S.W. 408, 412 (1919) (quoting THOMAS M. COOLEY, LAW OF TAXATION vol. 1, p. 182 (Callaghan & Co. 1876)). However, "the Legislature may delegate to and confer upon administrative bodies power to find facts and conditions." *Preston v. Clements*, 313 Ky. 479, 484, 232 S.W.2d 85, 88 (1950). *See Johnson*, 166 S.W.2d at 412–15 (explaining delegation of this factfinding function "does not violate sections 27, 28, 29 or 230 of the Constitution").

KRS 16.185(2) is the General Assembly's delegation to the KSP Commissioner of the non-legislative function of deciding whether "funds appropriated to the Finance and Administration Cabinet for the payment of judgments" may be used to indemnify "a Trooper R Class who is sued . . . and who personally suffers actual financial loss, unreimbursed from any source, by the

-17-

enforcement and satisfaction of the judgment" rendered against him or her. KRS 16.185(1).

That is, the statute establishes a legislative policy that taxpayer dollars appropriated to the Cabinet may be used in a way that bestows a benefit upon state troopers who were sued in civil court, but not every such trooper. The only troopers eligible are those whose conduct fulfilled a public purpose. Money "paid into the public treasury, to constitute public revenue" is there "to be paid out by the disbursing agents of the government only for public purposes in pursuance of regular appropriations." *Slack v. Maysville & L.R. Co.*, 52 Ky. 1, 119 (1852). *See also Dunlap v. University of Kentucky Student Health Services Clinic*, 716 S.W.2d 219, 222 (Ky. 1986), *superseded by statute on other grounds as stated in Withers v. University of Kentucky*, 939 S.W.2d 340, 345 (Ky. 1997) ("legislature is only authorized to raise and spend public money for a public purpose (KY. CONST. Secs. 58 and 171)").

4. *Elmore's assault of Appellant served no public purpose.*

"[T]he question arises in every case as to whether the particular claim is a moral one for which the state or other political division may appropriate the money . . . ." *Pennington v. Shannon*, 109 S.W.2d 389, 392 (Ky. 1937). "A 'moral obligation' means that some direct benefit was received by the state as a state or some direct injury has been suffered by the claimant under circumstances

-18-

where in fairness the state might be asked to respond . . . ." *Department of Finance v. Dishman*, 183 S.W.2d 540, 544 (Ky. 1944) (quoting *Talbott*, 86 S.W.2d at 1063).

We conclude Elmore was not performing a public service when, without a reasonable and good faith belief he was following the law, he assaulted Appellant. Addressing the underlying principle of public service, the Court said:

> Officers of the law should be encouraged rather than discouraged in the enforcement of the law and in the apprehension and prosecution of criminals who commit offenses against the state. And this is especially true when an officer acts in good faith and in the interest of the state but not merely to enrich himself. In such cases the officer is rendering a public service.

*Pennington*, 109 S.W.2d at 391.

When Appellant filed his federal lawsuit, he did not believe there was a public purpose in Elmore's conduct. But now he is pursuing part of the Finance and Administration Cabinet's appropriations, which can only be disbursed if Elmore performed a public service by tasing and assaulting Appellant. We find it hard to believe Appellant had a legitimate or reality-based change of heart. His purpose now is "merely to enrich himself." It is why he asked the KSP Commissioner to say Elmore reasonably believed he was following the law and, therefore, he was pursuing a public purpose. Everything indicates that would be

-19-

untrue and disbursing part of the Cabinet's appropriations under such circumstances would violate Section 230 of the Kentucky Constitution.

### 5. *Appellant's constitutional challenge fails.*

Appellant finds unconstitutional mischief in the legislative scheme. We do not.

His argument starts with a presumption we just refuted, that KRS 16.185(1) creates "a substantive, statutory, property right to indemnification[.]" (Appellant's Br. 12). However, we will indulge in a legal fiction that it does, in order that we may address his constitutional argument directly and on his terms.

He bases his constitutional challenge on these allegations of fact:

(1) KRS 16.185(2) provides no guidance to the Commissioner for adjudicating whether a trooper was "in the line of duty" or had "the good faith belief that the act or omission was lawful and proper";

(2) the legislative scheme provided no process to challenge the Commissioner's determination under KRS 16.185(2);

(3) KRS 16.185(2) invites unequal enforcement;

(4) the legislative scheme is unconstitutional as applied in this case; and

(5) KRS 16.185(2) is severable from the rest of the legislative scheme, should be stricken alone as unconstitutional, leaving current and former KSP troopers entitled to unqualified indemnification.

None of these assertions is supported by the record or our jurisprudence.

There is much that contradicts Appellant's claim KRS 16.185(2) provides no guidance, standards, or guardrails to restrain the commissioner from arbitrarily exercising the power that section describes. We identified some in our discussion of whether the trooper's conduct provided a "direct benefit" to the state or "where in fairness the state might be asked to respond . . . ." *Dishman*, 183 S.W.2d at 544. But there is plenty more.

When crafting KRS 16.185, the General Assembly used language commonly found in related areas of law where scope of employment and its good faith exercise become issues. Most obviously, the statute reflects the vernacular of qualified official immunity and, by extension, provides a source of the very guidance Appellant claims the statute lacks. *See Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Police officers are entitled to qualified official immunity for acts "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[,]" so long as those acts are performed in good faith and are within the scope of the individual's authority. *Id*. There is a wealth of authority here to guide commissioners, as well as to provide the stuff of challenges to the commissioner's decisions.

Similarly, the language of KRS 16.185(2) parrots that used in KRS 65.200 *et seq.*, Kentucky's Claims Against Local Governments Act (CALGA). CALGA is another indemnification statute requiring local governments to defend

their employees in civil suits filed against them for their acts committed in their official capacity. KRS 65.2005. So, in addition to the guidance provided by qualified official immunity jurisprudence, commissioners and others can access the CALGA jurisprudence. *See, e.g.*, *Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777 (Ky. 2008).

His contention there is no process to challenge the Commissioner's decision also fails. Our Supreme Court recently explained that "Kentuckians have a constitutional right of appeal from administrative decisions and the judiciary has constitutional authority to review administrative decisions for arbitrariness *even in the absence of a statute authorizing an appeal*." *Louisville Historical League, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 709 S.W.3d 213, 230 (Ky. 2025) (referencing KY. CONST. §§ 2, 14) (emphasis added). We are reviewing the KSP Commissioner's administrative decision now.

Appellant's third allegation that subsection (2) of the statute "invites unequal enforcement" is dependent on the first two allegations being true, that there are no guidelines and no pathway to challenge. So, even if this third allegation is true, it is offset by the very judicial oversight he now is enjoying. Applying it here, we find nothing arbitrary or capricious about the KSP Commissioner's denial.

Appellant's claim that the statute is unconstitutional as applied to him offends the very nature and purpose of the statute. We have no doubt that the legislative intent expressed by the statute was not to authorize gamesmanship of the kind Appellant attempts to perpetrate by this action. If this statute did, indeed, create a right—which we repeat it did not—Appellant most certainly did not "belong to the class intended by the Legislature to be protected by such statute." *Graham v. John R. Watts & Son*, 238 Ky. 96, 36 S.W.2d 859, 863 (1931).

Appellant's last allegation, that we should find KRS 16.185(2) not only unconstitutional but severable from the rest of the statute, is moot by our conclusion his constitutional challenge fails.

In summary, Elmore could not be indemnified with the Cabinet's appropriations per KRS 16.185 because he acted outside the scope of his employment and in bad faith when he used illegal force upon Appellant's person and unlawfully arrested him. What Elmore quitclaimed to Appellant was neither a right nor a chose in action, but nothing. Appellant's complaint was ripe for CR 12.02(f) dismissal because it failed to state a claim upon which relief can be granted.

## CONCLUSION

For the aforementioned reasons, the Franklin Circuit Court did not err when it dismissed Appellant's complaint pursuant to CR 12.02(f).

We AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANT:

W. Kash Stilz, Jr.
Lexington, Kentucky

BRIEF FOR APPELLEE FINANCE
AND ADMINISTRATION CABINET
SECRETARY HOLLY M.
JOHNSON:

William Robert Long, Jr.
Shan J. Dutta
Frankfort, Kentucky

BRIEF FOR APPELLEE PHILLIP
BURNETT, JR.:

Alea Amber Arnett
Frankfort, Kentucky